547 So.2d 382 (1989)
COMPADRES, INC., Plaintiff-Appellant,
v.
JOHNSON OIL AND GAS CORPORATION, et al., Defendants-Appellees.
No. 88-309.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*383 Jeff E. Townsend, Jr., Lake Charles, for plaintiff-appellant.
Karl E. Boellert, Lake Charles, for defendants-appellees.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
The litigants in this case were business associates and co-owners of mineral interests. Johnson Oil & Gas Corporation sold a working interest to plaintiff, Compadres, Inc. and later transferred working interests to others including Geotrends, Inc. These working interests applied to oil, gas and mineral leases referred to as the "Leckelt-Heywood leases." The plaintiff filed suit for various forms of relief based on the contractual relations existing between the parties. Johnson Oil & Gas Corporation and Geotrends, Inc. answered the suit and reconvened and sought judgment against Compadres, Inc. for certain relief. The trial court rendered judgment in one respect in favor of the plaintiff, but the judgment was largely in favor of the defendants and reconvenors. The plaintiff appealed.
Neither Johnson Oil & Gas Corporation (Johnson) nor Geotrends, Inc. (Geotrends) has filed a brief in this court. Compadres, Inc. (Compadres) is the only party which appealed. We gather that Johnson is in bankruptcy.[1]
FACTS
The trial court rendered written reasons for judgment. We quote from these reasons the following statement of facts:
"REASONS FOR JUDGMENT
"This is a suit arising out of certain letters of agreement and an operating agreement entered into by plaintiffs and defendants relative to leases in the Jennings Field of Acadia Parish, specifically the Leckelt and Heywood Leases.
"On October 1, 1984, Johnson Oil & Gas Corporation contracted with Compadres, Inc. to sell to it a twenty (20) percent undivided interest in certain mineral leases as aforesaid in consideration for which Compadres agreed to provide a turnkey workover [sic] of the Leckelt No. 4 well at the sole cost and expense of Compadres; in addition, Compadres agreed to provide and/or secure as co-maker or co-signer a bank loan for Johnson in the amount of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS. The repayment of the loan was to be the sole responsibility of Johnson but in the event *384 Johnson was to be unable to retire any portion of the debt of which Compadres was at risk, in such event Compadres had the right to retire any portion of said debt and Johnson agreed to assign additional interest to Compadres on the basis of one (1) percent working interest for each and every $3000 of principal reduction which Compadres was to be required to pay. This agreement dated November 8, 1984, but effective October 1, 1984 (P-1) also provides that:
"`The parties hereto recognize that as to the retained interest of Johnson, Johnson intends to and will assign certain undivided interest [sic] to third parties.'
"Further assignments of interest in the leases resulted in the following division of ownership:

"Johnson Oil & Gas Corp. 37.5%
Geotrends Corp. 37.5%
Compadres, Inc. 20%
Grady Beakley 5%

"Subsequently, an operating agreement (D-1) was executed by Johnson Oil & Gas Corp., Geotrends Corp., Compadres, Inc. and Grady Beakley, effective October 1, 1984, though it was signed subsequent to that date.
"On February 22, 1985, Johnson Oil & Gas Corp. (Johnson) and Geotrends Corp. (Geotrends) forwarded a letter of agreement to Compadres, Inc. (Compadres) concerning the workover [sic] of Leckelt No. 4 well. Compadres was to work over the Leckelt No. 4 well at its sole cost and expense and the seventy-five (75) percent interest of Johnson and Geotrends was to be a carried interest and Compadres was to receive seventy-five (75) percent of Johnson [sic] and Geotrends [sic] share of production from the Leckelt No. 4 well until the proceeds from the sale of production, after deducting service tax, windfall profit tax, and operating expense, equalled two hundred (200) percent of the total cost of the workover [sic]. This was accepted by Compadres on February 25, 1985, in the person of Bill Beakley.
"On March 11, 1985, Compadres moved a rig on Leckelt No. 4. On March 13, 1985, Johnson and Geotrends sent another letter of agreement to Compadres wherein Compadres would agree to workover [sic] the Leckelt No. 4 well, specifically described as a recompletion in the Clement sand, and carry Johnson and Geotrends for a thirty-five (35) percent working interest rather than the original seventy-five (75) percent carried interest. Johnson and Geotrends would pick up twenty (20) percent each on their own. It further provided that Compadres would be entitled to receive full proceeds from the Johnson-Geotrends' thirty-five (35) percent share of production, the carried interest, from the Clement sand production in the Leckelt No. 4 well until the proceeds from the sale after the deduction of usual items, equalled two hundred (200) percent of the thirty-five (35) percent carried interest of Johnson and Geotrends. This was agreed to and accepted on March 15, 1985 by Compadres through Bill Beakley. The letter of March 13, 1985 is Exhibit D-2.
"The other document pertinent to an analysis of this action is the operating agreement dated October 1, 1984, specifically Article VII, Paragraph B. Liens and Payments Defaults:
[This quotation is omitted. It is set forth as Footnote 3 of this opinion.]
"Almost from the start disaster greeted Compadres' attempt to reach total depth and complete the Clement sand after re-entry of the Leckelt No. 4 well hole. At a shallow depth the drilling bit accidentally milled out of the cased hole, forcing Compadres to actually side tract [sic] another hole which was unsuccessful in finding the Clement sand. Completion was actually attempted at approximately 7200 feet but the sand did not produce in commercial quantities and the consensus was that the Clement sand had faulted away. At that point in time, Johnson took over the operations and successfully completed in the Lower Robiera sand, an area of production in which Compadres had no `carry' according to the letter of agreement of March *385 13, 1985. The cost of workover [sic] for Compadres was in excess of $365,000 rather than the much more conservative anticipation."
The actual amount of the cost of the work over was $367,447.
At the time Johnson took over operations, Geotrends and Johnson informed Compadres that in their opinion the March 13, 1985 contract limited the enhanced payment (the 35% carried interests X 200%) to production from the Clement Sand. Since the production was ultimately from the Robiera Sand instead, Compadres was, in their opinion, only entitled to 20% of the revenue (for its 20% owned working interests). Johnson and Geotrends took the position that they would only be liable for 20% each of the operating expenses of the Clement Sand work over, while Compadres would be liable for 55% (20% owned interest, plus 35% carried interests). However, Johnson and Geotrends actually paid only 10% each of the costs.
On March 5, 1986 Compadres filed a lien for $347,000 against Johnson's interest in the Jennings-Heywood and Leckelt leases. On July 10, 1986 Compadres filed suit against Johnson and Geotrends for recognition of its liens, a declaratory judgment, amounts owed under the March 13, 1985 contract, and penalties as per the operating agreement. On October 21, 1986 Compadres filed a lien against Geotrends' mineral interests. Compadres also filed a notice of lis pendens affecting these mineral interests.
In its suit filed July 10, 1986 Compadres sought declaratory relief in the form of a judgment declaring that Compadres was the owner of an additional one percent (1%) interest in the subject lease for every $3000 payment made by Compadres on the $150,000 loan which had been made to Johnson. There was no allegation that Compadres had made any such payments. Johnson did not contest the existence of the agreement. The trial court denied the declaratory relief sought by Compadres. Compadres appeals this ruling.
Compadres sought $146,978.80 from the defendants for their 40% of the non-carried portion of the work over costs (40% of $367,447). The trial court granted judgment in favor of Compadres on this claim, subject to a credit of $78,252.85 already paid. However, the trial court held that the balance was owed by Geotrends only. Compadres appeals this ruling.
Compadres sought additional declaratory relief declaring it to be entitled to an additional 35% working interest in the Leckelt # 4 well until it has recovered costs of $257,212.90. This would include recovery relative to the Robiera Sand production. Compadres appeals an adverse ruling on this claim.
The two defendants filed answers and each filed a reconventional demand. The relief sought by the two defendants was similar. They sought dismissal of plaintiff's suit, rescission of the original contract, assessment of damages against Compadres and cancellation of the liens filed by Compadres. The damages prayed for by Johnson and Geotrends differed in one respect. The allegations in both reconventional demands set forth two kinds of damages: the cost of drilling a new well to tap the Clement Sand or the loss of revenues (alleged in each case to be $103,125 or $212,703.75 per share respectively) and $250,000 in damages resulting from filing the lien notices and notice of lis pendens. Johnson did not pray for the $250,000 in damages resulting from filing the liens and the lis pendens. Geotrends prayed for the total of both kinds of damages. The trial court gave judgment ordering the cancellation of the liens and the lis pendens. It gave judgment to both reconvenors against Compadres for damages for the "unlawful" filing of the liens and the lis pendens. The trial court also awarded attorney's fees to the reconvenors. Compadres appealed this ruling.
The defendants and reconvenors have neither appealed from the trial court's judgment nor answered the plaintiff's appeal.

RIGHT TO LIEN
Compadres contends the district court erred in finding that it was not entitled *386 to a statutory or contractual lien. LSA-R.S. 9:4861(A), Part of the Oil, Gas and Water Well Lien Act, provides:
"§ 4861. Privilege for labor, services or supplies
"A. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, or performs any labor or service in the construction, operation, or repair or in connection with the construction, operation, or repair of any flow lines or gathering lines, regardless of their length, which are attached to or connected with the oil, gas or water well or wells, and any pipeline owned by the producer, operator or contract operator of the well, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, and rights-of-way in the case of a gathering line, flow line or other producer, operator or contract operator owned pipeline for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten percent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection."
The parties stipulated and agreed at trial that Compadres was the operator for the work over of the Leckelt # 4 Clement Sand. The trial court found that LSA-R.S. 9:4861 creates a privilege for laborers and servicemen and is not applicable to owners and operators. The trial court also found that an owner cannot lien his own property.
The phrase "any person who performs any labor or service" has been interpreted stricti juris by the courts but has been held to include an owner-operator. In Blasingame v. Anderson, 236 La. 505, 108 So.2d 105 (1959), an owner-operator was permitted to assert a privilege against the holder of a fractional working interest. An owner-operator was granted a lien against less than all of the working interests in Kenmore Oil Co. v. Delacroix, 316 So.2d 468 (La.App. 1st Cir.1975). See also J.E. Babcock & R.O. Thomas, Some Common Issues Involved in Oil and Gas Bankruptcies, 46 La.L.Rev. 763 at 780 (1986). In view of the broadness of the language of the statute when given its literal interpretation, as required by LSA-C.C. art. 13, we find that Compadres is entitled to statutory liens against Johnson's and Geotrends' working interests in the Leckelt lease under LSA-R.S. 9:4861 for any sums due and owing. The contention that Compadres could not lien its own property interests does not advance defendants' cause. Under the authorities cited above, Compadres was entitled to lien the fractional interests of the other fractional owners.

TIMELINESS OF THE LIENS
Plaintiff contends the trial court erred in finding the liens were not timely asserted in accordance with LSA-R.S. 9:4862. The trial court found that Act 191 of 1986 (effective August 30, 1986) overruled the prior jurisprudence which held that LSA-R.S. 9:4862 and 9:4865 did not create a prescriptive period for filing a lien. We agree that Act 191 of 1986 did create a prescriptive period for filing a lien under LSA-R.S. 9:4861.[2] See 1986 La.Acts. 191 (1986); Louisiana Materials Co., Inc. v. Atlantic Richfield Co., 493 So.2d 1141 at 1147, n. 6 (La.1986); P. Martin, Mineral Rights, 48 La.L.Rev. 387 at 412 (1987); P. Martin, Mineral Rights, 47 La.L.Rev. 347 *387 at 363 (1986). However, we find that 1986 La.Acts 191 is inapplicable to the case before us because Act 191 became effective after the period in which Compadres could preserve its liens under the prior law and jurisprudence. Therefore, Act 191 could not, as defendants argue, have shortened the applicable period for filing a lien.
Without going too deeply into what the law provided prior to the effective date of Act 191 of 1986, we may summarize our conclusions. Under the law and jurisprudence in effect prior to Act 191 a claimant had 180 days from the date the last labor was performed or service was rendered in which to file its lien in order to preserve a privilege with superior rank. Recordation is not required to preserve the privilege. Louisiana Materials Co. v. Atlantic Richfield, supra, and Hawn Tool Co. v. Crystal Oil Co., 514 So.2d 636 (La.App. 2d Cir. 1987). The conclusion we reach after considering these two cases is this: whether a lien claimant recorded or failed to record the lien (and if recorded, whether or not it was recorded within or without the statutory period), the claimant had one year plus the recordation period provided by LSA-R.S. 9:4862 in which he might file suit to preserve the privilege. Our opinion in I.E. Miller of Eunice, Inc. v. Source Petroleum, Inc., 484 So.2d 239 (La.App. 3d Cir.), affirmed, 493 So.2d 1141 (La.1986), did not go this far. Insofar as our holding there conflicts with Louisiana Materials Co. and Hawn Tool Co., we now adopt the broader view expressed in these cases.
Applying our view stated above to this case, we conclude that the trial court erred in holding that Compadres did not timely assert its statutory privilege. The award of damages based on that ruling must fall.
The trial court found that Compadres provided its final labor service to the Leckelt # 4 well in July of 1985. Compadres' suit against the defendants was filed on July 10, 1986. If we assume that the last labor was performed on July 1, 1985, Compadres had one year and 180 days after that date within which it could file its suit to preserve its liens. The dates of recordation of liens have no significance in the matter. As July 10, 1986 is well within one year and 180 days from July 1, 1985, the separate liens filed against the defendants were preserved. That portion of the trial court's judgment which ordered cancellation of the liens and awarded damages for their recordation must be reversed.
Reverting to the question of retroactivity of Act 191 of 1986, we make this observation. Act 191 became effective August 30, 1986. By then Compadres had already preserved its privilege by filing suit on July 10, 1986.

BASIS FOR FILING LIS PENDENS
Plaintiff contends the trial court erred in holding there was no basis for filing a notice of lis pendens against Johnson's and Geotrends' mineral interests.
As we hold that Compadres had a privilege on the interests of Johnson and Geotrends and had the right to file the liens to preserve the privilege, it follows that Compadres had the right to file the notice of lis pendens. Therefore, the trial court erred in awarding damages and attorney's fees to Johnson and Geotrends against Compadres for filing the notice of lis pendens.

DECLARATORY JUDGMENT
Compadres contends the trial court erred in failing to issue a declaratory judgment recognizing the viability of the contract for the transfer of mineral interests upon payment by Compadres of a loan in favor of Johnson.
Declaratory relief is available only to decide justiciable controversies. The courts are not empowered to render advisory opinions on abstract questions of law. A "justiciable controversy" is an existing, actual and substantial dispute which involves the legal relations of the parties who have real adverse interests and upon which the judgment of the court may effectively operate through a decree of conclusive character. See Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971); Morial v. Guste, 365 So.2d 289 (La.App. 4th Cir.), writs refused, 365 So.2d 1375 (La.1978).
*388 In the case before us, Johnson admitted at trial that the contract in question would be binding on it in the event that Johnson defaulted on its loan payments. Therefore, a justiciable controversy was not presented. The trial court did not abuse its discretion in refusing to render a declaratory judgment. See LSA-C.C.P. art. 1876.

THE CLEMENT SAND AGREEMENT
Compadres alleges that the trial court erred in interpreting the March 13, 1985 contract between itself and defendants to not include recovery of the 35% carried interest from the Robiera Sand production. The parties contracted for Compadres, as operator, to rework the Leckelt # 4 in the Clement Sand. The contract was a brief letter agreement which is set forth below:
"Dear Bill:
"This letter, when properly executed by you in the space hereinafter provided, will constitute an agreement between Johnson Oil & Gas Corporation/Geotrends Corp. (hereinafter for convenience sometimes referred to as `JOG-GEO') and Compadres, Inc. (hereinafter for convenience sometimes referred to as `COMPADRES').
"Compadres agrees to workover [sic] the Leckelt # 4 well, more specifically described as a recompletion in the Clement Sand (occuring [sic] between E-log depths of 7270'-7355' in the Leckelt # 4) and carry JOG-GEO for 35% working interest.
"Compadres shall be entitled to receive full proceeds from JOG-GEO'S 35% share of production (the carried interest) from Clement Sand production in the Leckelt # 4 until the proceeds from the sale of production; after deducting severance tax, windfall profit tax and lease operating expense, equal 200% of that portion of the workover [sic] costs attributable to JOG-GEO's 35% carried interest. In other words, Compadres shall be entitled to recoup 70% of the cost of the workover [sic] out of JOG-GEO's 35% carried working interest before said interest reverts back to JOG-GEO.
"If this meets with your approval and is your understanding of our agreement please date, sign and return one (1) copy of this letter to me in the enclosed stamped, self-addressed envelope. The other copy is for your files.
 Very truly yours,
 JOHNSON OIL & GAS CORPORATION"
This contract was signed by Compadres, Johnson and Geotrends. The ownership interests of the mineral lease at the time of the contract were as follows:

Johnson Oil & Gas 37.5%
Geotrends, Inc. 37.5%
Compadres, Inc. 20%
Grady Beakley 5%

The "carried interest" referred to in the contract is derived from 17.5% each of Johnson's and Geotrends' ownership interests (17.5 + 17.5 = 35%). The "carried interest" refers to the fact that Compadres contracted to pay 17.5% each (35% total) of Johnson's and Geotrends' liabilities for operating expenses. The consideration for this was that, in the event the Clement Sand produced in commercial quantities, Compadres would be entitled to recoup 200% of the 35% carried interest from the Clement Sand production. Johnson and Geotrends were each left with a 20% "non-carried interest" (37.5% full ownership interest minus 17.5% to be carried by Compadres = 20% non-carried interest). In other words, they were each liable for 20% of the operating expenses from the Clement Sand work over whether there was production or not.
The problem herein arose after Compadres reworked the Clement Sand without success, but with a substantial cost overrun. Admitting defeat, Compadres removed its drilling equipment from the well site. Johnson then stepped in as operator and reworked the Robiera Sand, which was at a higher level in the same hole. The Robiera Sand proved to be commercially productive. Compadres then demanded recovery of 200% of the 35% "carried interest," stipulated in the Clement Sand contract, from the Robiera Sand production. The trial court held that the contract was limited to the Clement Sand and therefore *389 Compadres could not recover the "carried interest" from the Robiera Sand production.
We agree. The contract is very specific that the 200% recoupment was to be from Clement Sand production. Compadres gambled on the chance of large profits and lost. Compadres now argues that this interpretation was not the true intent of the parties. We find no justification for seeking an intent contrary to the clear intent evident from the face of the contract. The provisions of LSA-C.C. art. 2046 govern:

"Art. 2046. No further interpretation when intent is clear
"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."
The contract is clear and unambiguous. The court cannot disregard the plain meaning of the contract under pretext of pursuing its spirit. See C.C. art. 2046, Official Comment (b). The trial court interpreted the Clement Sand contract correctly.

THE NON-CARRIED INTERESTS
Compadres argues the trial court erred in granting a judgment solely against Geotrends for the unpaid portion of the operating costs attributable to the non-carried interests under the Clement Sand Agreement of March 13, 1985. We agree.
At trial, the president and sole owner of Johnson Oil & Gas Company testified that on January 1, 1986 Johnson paid $78,252.85 to Compadres for the operating costs due from Johnson's 20% non-carried interest in the Clement Sand work over. However, the evidence shows that this payment was made on behalf of both Johnson and Geotrends for one-half of each of their non-carried interests. In a letter dated March 4, 1986 a tender was made by Johnson of $52,282.23 in settlement of the remaining one-half of the operating costs owed by Johnson and Geotrends (10% each). Compadres refused the tender and filed this suit.
We find the trial court erred in holding Geotrends solely liable to Compadres for the balance owed on the full 40% non-carried interest, or $68,725.95, and reverse accordingly to hold Johnson Oil & Gas Company and Geotrends each liable for one-half of the unpaid non-carried interest. The combined non-carried interest of Johnson Oil & Gas Company and Geotrends, Inc. was 40%. Their share of the total operating costs of $367,447 (40% of this amount) was $146,978.80. As $78,252.85 had been paid, the balance amounted to $68,725.95. Johnson and Geotrends each owe one-half of this balance, or $34,362.97 each. Each should be cast for $34,362.97.

DAMAGES AND ATTORNEY'S FEES
The trial court awarded damages to Johnson of $200,000, plus $15,000 attorney's fees, and awarded damages to Geotrends of $250,000, plus $15,000 attorney's fees. The trial court's written reasons for the awards were as follows:
"Damages are due defendant Johnson due to the fact that both the notice of lis pendens and the lien were filed unlawfully and placed Johnson's properties out of commerce, attempted to expedite Johnson's insolvency and interfered with business relations and investments. The purchasers of production were induced to withhold payments and the bank was contacted by Compadres concerning Johnson's credit. The Court feels that an award of TWO HUNDRED THOUSAND ($200,000) DOLLARS plus attorney's fees of FIFTEEN THOUSAND ($15,000) DOLLARS will adequately compensate this defendant for its loss. As to Geotrends, damages are due for the same reasons as stated above. The Court was impressed by the testimony of Mr. Champagne concerning failed investments caused by the filing of the lien against Geotrends. The Court feels that an award of TWO HUNDRED FIFTY [sic] ($250,000) DOLLARS, plus FIFTEEN THOUSAND ($15,000) DOLLARS attorney's fees will adequately compensate this defendant for its losses and damages."
As previously discussed, the damages awarded for erroneous filing of notice of lis *390 pendens were improper. Therefore, we will turn to a discussion of the liens.
We have already determined that the liens were justified and were timely preserved, albeit without superior rank. However in their brief submitted to the trial court the defendants have averred that the liens were improperly recorded in that they should not have included the Jennings-Heywood lease in the property descriptions.
Damages based on claims of wrongfully filed liens are not awarded unless the wrongful lien recordation was made in bad faith or with malice. Grover v. Carter, 498 So.2d 132 (La.App. 5th Cir.1986), writ denied 500 So.2d 422 (La.1987); Dickson v. Moran, 344 So.2d 102 (La.App. 2d Cir.1977), and the cases cited therein.
The liens filed by Compadres against Johnson and Geotrends described their property interests in both the Leckelt and Jennings-Heywood leases. A lien is applicable only to the lease on which the unpaid labor or services were furnished. LSA-R.S. 9:4861; Lor, Inc. v. Martin Exploration Co., 489 So.2d 1326 (La.App. 1st Cir.), writ denied 493 So.2d 1217 (La.1986). Therefore, these liens may have been over-inclusive because they included the Jennings-Heywood lease as well as the Leckelt lease. However, Compadres filed the liens in reliance on the operating agreement. Section VII B[3] of the operating agreement contains language which may be interpreted as providing that any liens shall cover all properties covered by the agreement. Therefore, we do not find that Compadres acted in bad faith or with malice in recording its liens against the Jennings-Heywood lease.
The trial court also awarded damages for Compadres' alleged interference with defendants' business relations. These damages are clearly not in accordance with Louisiana law. It is well settled that Louisiana law does not recognize the tort of intentional interference with contracts. Cust v. Item Co., Ltd., 200 La. 515, 8 So.2d 361 (1942); Lucky v. Fricks, 511 So.2d 1315 (La.App. 2d Cir.), writ denied, 514 So.2d 455 (La.1987); Charles v. Faust, 487 So.2d 612 (La.App. 4th Cir.1986). We also note that the only evidence of "failed investments" was the completely unsupported, self-serving and speculative testimony of defendants as to contracts they "could have" made but did not and the subsequent "losses." Also, defendants alleged that Compadres "caused" other business and persons with whom defendants had contracts to breach their contracts. This testimony is an inadequate and improper basis for an award of damages.

DECREE
For the reasons stated herein, the judgment of the trial court is amended in part to cast defendant, Johnson Oil & Gas Corporation, *391 in judgment for the sum of $34,362.97 in favor of Compadres, Inc. and to cast defendant, Geotrends, Inc., in judgment for the sum of $34,362.97 in favor of Compadres, Inc. The judgment of the trial court in favor of the defendants-plaintiffs-in-reconvention awarding damages and attorney's fees is reversed. The judgment of the trial court is reversed in all other respects, except insofar as it dismisses all other principal and reconventional demands. The costs of the trial are to be borne equally by the parties. Costs of appeal are assessed to the defendants-appellees. The judgment is hereby recast and rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Compadres, Inc., and against the defendant, Johnson Oil & Gas Corporation, in the sum of $34,362.97, and against Geotrends, Inc. in the sum of $34,362.97, with legal interest on each sum from date due until paid;
IT IS ORDERED, ADJUDGED AND DECREED that the demands of the defendants-plaintiffs-in-reconvention be and are hereby dismissed with prejudice;
IT IS ORDERED, ADJUDGED AND DECREED that all other demands of the plaintiff, Compadres, Inc., be and are hereby dismissed with prejudice; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of litigation in the trial court be paid in equal amounts by the three litigants.
Costs of appeal are assessed to defendants-appellees.
AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] On the day before this case was orally argued on appeal Compadres filed in this court an order from the United States Bankruptcy Court for the Western District of Louisiana, Lake Charles Division, Case No. 89BK-802630LC11, captioned "In Re: Johnson Oil and Gas Corporation, Debtor in Possession" from which we gather that Johnson is in bankruptcy. The order is dated May 18, 1989 and reads as follows:

"The automatic stay is lifted to allow Compadres, Inc., to continue the appeal in that matter entitled `Compadres, Inc. v. Johnson Oil and Gas Corporation., et al' # 88-309, Third Circuit Court of Appeals, Louisiana; any enforcement of any judgment against Johnson Oil and Gas Corporation is stayed until further order of this Court."
[2] Defendants incorrectly argue that the 1986 amendments to LSA-R.S. 9:4862 and LSA-R.S. 9:4865 extend the time for recording a lien from 90 days to 180 days. That change was made by the 1983 amendment rather than the 1986 amendment.
[3] B. Liens and Payment Defaults:

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.
If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, to obtain reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph.