GUIDRY, J.
|2A subdivision homeowner appeals a summary judgment rendered in favor of the insurer of the subdivision homeowners’ association, finding that the association’s policy did not provide coverage for the claims asserted by the homeowner in a personal injury suit filed against the association. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On February 2, 2010, Thomas E. Sova, a lot owner in The Cove Subdivision in East Baton Rouge Parish, filed a petition for declaratory judgment and damages against The Cove Homeowners Association (the Association), which administers and enforces the obligations, covenants, restrictions, servitudes and conditions for the Cove Subdivision. In his petition, Mr. Sova sought a determination of the legality of fines and penalties imposed by the Association for violations of subdivision restrictions [1] for which Mr. Sova was issued several written and verbal notices beginning in November 2007. Mr. Sova further asserted that the Association negligently executed affidavits and filed them into the mortgage records of the Clerk of Court of East Baton Rouge Parish, unlawfully caused a lien to be placed on his property, repeatedly harassed and abused him, and violated his privacy, causing him mental anguish and other damages.
Later in the course of the litigation, Mr. Sova filed a supplemental and amending petition adding State Farm Fire and Casualty Company (“State Farm”), as the insurer of the Association, as a defendant in his suit. State Farm answered Mr. Sova’s amended petition to admit that “at all times pertinent herein,” the Association “was insured pursuant to a certain policy of insurance issued by State |3Farm”; however, State Farm denied that the policy provided “any coverage for any of [Mr. Sova’s] claims made in this matter” and denied “any and all liability whatsoever to” Mr. Sova.
Thereafter, State Farm filed a motion for summary judgment asserting that there was no coverage for Mr. Sova’s claims under the policy issued to the Association. A hearing on State Farm’s motion *866 for summary judgment was held on August 29, 2011, following which the trial court granted the motion dismissing “any and all” claims asserted by Mr. Sova against State Farm with prejudice. It is from this judgment that Mr. Sova now appeals, asserting that the trial court erred in finding that there is no genuine issue of material fact as to whether coverage is provided for his claims under State Farm’s policy issued to the Association.
SUMMARY JUDGMENT
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230-231.
When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See La. C.C.P. art. 966(C)(2); Buck’s Run Enterprises, Inc. v. Mapp Construction, Inc., 99-3054, p. 4 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment bears |4the burden of proving some exclusion applies to preclude coverage. Lewis v. Jabbar, 08-1051, p. 5 (La.App. 1st Cir. 1/12/09), 5 So.3d 250, 254-55.
However, on issues for which the moving party will not bear the burden of proof at trial, the moving party’s burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the nonmov-ing party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Evins v. Louisiana Farm Bureau Mutual Insuance Company, 04-0282, p. 3 (La.App. 1st Cir.2/11/05), 907 So.2d 733, 734. Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage. Albert v. State Farm Mutual Automobile Insurance Company, 09-1551, p. 4 (La.App. 1st Cir.4/30/10), 38 So.3d 1004, 1007. Thus, on the issue of coverage, State Farm need only point out the absence of factual support for Mr. Sova’s claim of coverage.
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Charlet v. Legislature of the State of Louisiana, 97-0212, p. 7 (La.App. 1st Cir.6/29/98), 713 So.2d 1199, 1203, writs *867 denied, 98-2023, 98-2026 (La.11/13/98), 730 So.2d 934.
|fiMoreover, interpretation of an insurance policy is usually a legal question that can properly be resolved by means of a motion for summary judgment. Miller v. Superior Shipyard and Fabrication, Inc., 01-2683, p. 4 (La.App. 1st Cir.11/8/02), 836 So.2d 200, 203. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded when applied to the undisputed material facts shown by the evidence supporting the motion. Reynolds v. Select Properties, Ltd., 93-1480, p. 2. (La.4/11/94), 634 So.2d 1180, 1183.
INSURANCE COVERAGE
An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent, and the agreement must be enforced as written. La. C.C. art. 2046; Davenport v. Prudential Property & Casualty Insurance Co., 03-2593, pp. 3-4 (La.App. 1st Cir.10/29/04), 897 So.2d 98, 101, writ denied, 04-2900 (La.2/4/05), 893 So.2d 882. Unless the words of the policy have acquired a technical meaning, they are to be construed using their plain, ordinary, and generally prevailing meaning. See La. C.C. art. 2047; Bennett v. Ragon, 04-0706, p. 6 (La.App. 1st Cir.3/24/05), 907 So.2d 116, 120.
Moreover, as observed by this court in Sensebe v. Canal Indemnity Company, 09-1325, p. 6 (La.App. 1st Cir.2/24/10), 35 So.3d 1122, 1125-26, aff'd & remanded, 10-0703 (La.1/28/11), 58 So.3d 441 (citations omitted):
An insurer has the burden of proving that a loss falls within a policy exclusion. Additionally, in determining whether an exclusion applies to preclude coverage, courts are guided by the well-recognized rule that an exclusionary clause in an insurance policy must be strictly construed. Nonetheless, an insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably | (¡contemplated by its terms or so as to achieve an absurd conclusion.
DISCUSSION
In his original petition, Mr. Sova alleged the following acts of harm to have been committed by the Association:
24.
[Mr. Sova] contends that he is being singled out, harassed and subject to clearly biased enforcement of alleged restrictions by [the Association], In addition to the barrage of hand written notes left at his residence and attached herein, [Mr. Sova’s] neighbors, who are also Board members, have conducted and continue to conduct video surveillance on [Mr. Sova] and all visitors to his residence. [Mr. Sova] and visitors to his residence have been subject to repeated threats by [the Association], the hurling of insults, and harassment.
25.
[Mr. Sova] contends that:
[[Image here]]
d. [The Association] negligently executed an affidavit and caused to be filed a lien on [Mr. Sova’s] property knowing that the Cove had no authority to impose said fines;
e. [The Association], through its officers and directors, were negligent *868 in creating a cloud on the title to [Mr. Sova’s] property; and
f. [The Association] has repeatedly harassed and abused [Mr. Sova] and repeated [sic] invaded his privacy and his right to the peaceful enjoyment of his residence.
26.
[Mr. Sova] contends that the [Association] is liable unto [Mr. Sova] for negligence pursuant to La. [C.C. art.] 2315, et seq. The actions of the [Association] caused [Mr. Sova] mental anguish and other damages which will be more fully shown at the trial in this matter all of which [Mr. Sova] specifically sues for herein.
State Farm contends that the trial court properly found there is no coverage because the harm alleged by Mr. Sova either falls within the parameters of an exclusion or fails to invoke coverage based on the following provisions contained with the policy issued by State Farm to the Association:
SECTION II
COMPREHENSIVE
BUSINESS LIABILITY
| COVERAGE L—
BUSINESS LIABILITY
We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. This insurance applies only:
1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period;
2. to personal injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
3. to advertising injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services.
[[Image here]]
BUSINESS
LIABILITY
EXCLUSIONS
Under Coverage L, this insurance does not apply:
1. to bodily injury or property damage:
a. expected or intended from the standpoint of the insured; or
b. to any person or property which is the result of willful and malicious acts of the insured.
This exclusion does not apply to bodily injury or property damage resulting from the use of reasonable force to protect persons or property;
2. to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.
[[Image here]]
16. to personal injury or advertising injury:
a. arising out of oral or written publication of material if done by or at *869 the direction of the insured with knowledge of its falsity;
|sb. arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
c. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or
d. for which the insured has assumed liability in a conract or agreement. This part of this exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement;
[[Image here]]
SECTION II
OPTIONAL
COVERAGE
OPTIONAL
COVERAGE
The following Optional Coverage is subject to all the terms and conditions applicable to Section II of this policy, except as otherwise provided for herein. This Optional Coverage applies only as indicated in the Declarations.
OPTION DO—
Directors and Officers Liaibility
1. We will pay those sums that the insured becomes legally obligated to pay as damages because of “wrongful acts” committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association.
2. This optional coverage does not apply to:
a. any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts;
b. any bodily injury, property damage, personal injury or advertising injury liability;
[[Image here]]
h. damages other than money damages.
3. When used in the provisions of this Option DO, the unqualified word insured means only the following:
a. any of your directors or officers, collectively and individually, which form your administrative body provided that each individual:
(1) is duly elected by the unit-owners to serve on the managing body of the Condominium/Association; and
|b(2) acts within the scope of their duties on your behalf;
b. any of your members, but only with respect to their liability for your activities or activities they perform on your behalf as a member of a committee appointed by the administrative or managing body of the Condominium/Association;
c. the Named Insured shown in the Declarations with respect to liability because of “wrongful acts” committed by an insured.
4. The most we will pay for damages because of “wrongful acts” as a result of any one “occurrence” is the Coverage L — Business' Liability limit shown in the Declarations. This Coverage L limit is also the most we will pay for the sum of all damages because of “wrongful acts” arising from all “occurrences” during the policy period.
5. When used in the provisions of this Option DO:
*870 a. “wrongful acts” means any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association;
b. “occurrence” means a “wrongful act”, including any conduct related to any of these, during the policy period, which results in a claim made in writing or suit filed no later than one year from the end of the policy period.
6. All loss or damage involving a single “wrongful act”, or series of related “wrongful acts”, caused by one or more persons is considered one “occurrence[.]”
7. This Option DO applies to “wrongful acts” committed before this optional coverage became effective if the insured had no knowledge of a claim or suit at the effective date of this option and there is no other applicable insurance.
8. Our Coverage L limit will not be increased because of:
a. the number of persons insured under this Option DO;
b. the number of persons or organizations who have sustained injury or damage; or
c. the number of claims made or causes of actions or suits brought because of injury or damage.
SECTION II
DEFINITIONS
DEFINITIONS
| inThis section contains the definitions of the words printed in bold face in Section II of this policy. It is an integral part of the policy. The definitions appearing below will be applied as if they were included each time the words they define are used in Section II of this policy. When used in the provisions applicable to Section II of this policy (including endorsements forming a part of this policy):
I. advertising injury means injury arising out of one or more of the following offenses:
a. oral or written publication of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services;
b. oral or written publication of material that violates a person’s right of privacy;
[[Image here]]
3. bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from the bodily injury, sickness or disease at any time;
[[Image here]]
II. occurrence means:
a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage; or
b. the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury.
For purposes of this definition, bodily injury or property damage resulting from the use of reasonable force to protect persons or property will be considered an accident;
12. personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:
a. false arrest, detention or imprisonment;
b. malicious prosecution;
*871 c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
d. oral or written publication of material that slanders or libels a person or organization or disparages a person’s or organizations goods, products or services; or
|ne. oral or written publication of material that violates a person’s right of privacy;
According to the policy language quoted above, for coverage to be provided under Business Liability provisions, the injuries claimed by Mr. Sova would have to be classified as bodily injury, property damage, personal injury, or advertising injury,[2] as defined in the policy, and further, the injury would have to be caused by an “occurrence” as defined in the policy. The policy alternately defines “occurrence” based on the type of injury claimed. If the injury claimed falls within the classification of “bodily injury,” then “occurrence” is defined as an accident, such that the bodily injury must be caused by an “accident” to be covered under the Business Liability coverage. Claims for mental anguish have been held to be claims for “bodily injury” under similar insurance policy definitions of that term in the jurisprudence. See Hill v. Shelter Mutual Insurance Company, 05-1783, p. 5 (La.7/10/06), 935 So.2d 691, 695; Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94), 632 So.2d 736, 744-45.[3]
The evidence introduced by State Farm in support of its motion for summary judgment included a copy of the policy issued to the Association and the affidavits of Mr. Sova and Benny Alford, a representative of the Association. In his affidavit, Mr. Sova states that he has “been subjected to unwanted and unprovoked harassment,” and he goes on to cite specific incidents of him being cited by the Association for violating parking and other restrictions. The affidavits for Mr. Alford that State Farm submitted were actually the affidavits the Association had filed with the parish clerk of court to preserve a privilege and create liens against Mr. Sova’s property for the unpaid fines and penalties assessed against Mr. Sova. |12In the affidavits, Mr. Alford attests to the various fines levied against Mr. Sova by the Association for violating restrictions.
Also, in its memorandum in support of its motion for summary judgment, State Farm refers to Mr. Sova’s original petition and the exhibits attached thereto, which exhibits consist of the Association restrictions and bylaws and various written notices to Mr. Sova regarding alleged violations of restrictions and the assessment of fines, penalties and liens. In opposition to the motion, Mr. Sova submitted a copy of the Association restrictions and bylaws and a copy of a certificate from the secretary of state certifying that the attached restrictions and bylaws are “full, true and correct.”
Based on the evidence presented in support of the motion for summary judgment, we find that State Farm sufficiently pointed out the lack of factual support to *872 prove that an “accident” occurred whereby Mr. Sova would be entitled to recover under the policy for his claim of mental anguish. Our jurisprudence holds that an “accident,” as used in insurance policies, is an event that is unforeseeable and unexpected by the person acted on or affected by the event. Knight v. L.H. Bossier, Inc., 118 So.2d 700, 703-04 (La.App. 1st Cir.1960).
The restrictions for the Cove subdivision, which were filed and recorded with the East Baton Rouge Clerk of Court on January 19,1994, plainly state that
All obligations, covenants, restrictions, servitudes and conditions of these restrictions, including without limitation, the assessment, fine, and penalty provisions, are intended as and are declared to be reciprocal, predial (landed) servi-tudes and real obligations established by each obligation, covenant, restriction, servitude, and condition and to pay all assessments and fines shall be also the personal obligation of the Owner of a Lot in favor of the Association and Owners of other Lots.
The restrictions further provide that:
11seach Owner of a Lot by recordation of an act transferring title of a Lot to said Owner, whether or not it shall be so expressed in said act, does recognize and agree that these restrictions are intended to and do restrict, inhibit and prohibit free use and development of the Property and the Lots and each Owner shall be deemed to have agreed to be bound by these restrictions including, without limitation, those which may be deemed or determined to be vague or indefinite.
So Mr. Sova cannot validly claim that enforcement of the restrictions and assessment of fines and penalties against him was unexpected or unforeseeable. Moreover, the evidence submitted in support of the motion for summary judgment shows that oral and written notice was provided to Mr. Sova regarding the enforcement and assessment actions taken by the Association. Therefore, we find there is no genuine issue of material fact presented as to whether an “accident” occurred, such that Mr. Sova’s claim for mental anguish would be covered as a “bodily injury” under the policy.
Turning now to Mr. Sova’s remaining claims of harassment and invasion of privacy and allegations suggesting malicious prosecution and slander, we observe that none of these claims appear to affect or involve operation of the physical structure of the body, so they would not be classified as bodily injuries. See Crabtree, 632 So.2d at 745. Nor would the claims be subject to coverage as an “advertising injury,” since claims for an “advertising injury” require that the occurrence that caused the injury be committed in the course of advertising a good, product, or service of the Association. Thus, for the remaining claims to be compensable under the Business Liability provisions of the policy, the remaining claims would need to be classified as a “personal injury.” Moreover, an “occurrence” for the purposes of a “personal injury” is defined simply as “the commission of an offense, or series of similar or related offenses, which results in a personal injury....”
The only enumerated offenses that appear to apply under which the remaining claims asserted by Mr. Sova could be classified as a “personal injury,” 114as defined in the policy, would be if the claims could be said to have arisen from the offenses of malicious prosecution or the oral or written publication of material that slanders or libels a person or organization. So in order to be entitled to summary judgment, the evidence presented by State Farm must show that Mr. Sova will be unable to *873 present factual proof that the Association committed the offenses of malicious prosecution or made oral or written publication of material that slandered or libeled Mr. Sova, which resulted in a personal injury.
State Farm’s reference to Mr. Sova’s petition, and particularly the notices issued by the Association attached to the petition, clearly show a lack of factual support for the offense of malicious prosecution. It is a well-settled rule that where a party has communicated to his counsel all the facts bearing on the case of which he has knowledge, or could have ascertained by reasonable diligence and inquiry, and has acted upon the advice received honestly and in good faith, the absence of malice is established, the want of probable cause is negatived, and the action for malicious prosecution will not lie. McClanahan v. McClanahan, 11-284, p. 7 (La.App. 5th Cir.12/28/11), 82 So.3d 580, 584-535, citing Eusant v. Unity Industrial Life Ins. and Sick Benefit Ass’n of New Orleans, Inc., 195 La. 347, 353, 196 So. 554, 556 (1940). Several of the notices attached to Mr. Sova’s petition not only show that the Association acted with the advice of counsel, but some of the notices issued to Mr. Sova were actually issued by counsel for the Association. Consequently, the Association sufficiently established that malicious prosecution cannot be factually established, and Mr. Sova’s opposition to the motion for summary judgment does not rebut this showing.
This leaves one final offense upon which personal injury may be premised, that is to show that there was oral or written publication of material that slandered or libeled Mr. Sova. A claim of libel or slander is generally a claim of defamation, since defamation occurs through either libel or slander. Libel is defamation which |1ñis “expressed by print, writing, pictures, or signs,” while slander is communicated by “oral expressions or transitory gestures.” City of Natchitoches v. Employers Reinsurance Corp., 02-0147, p. 5 (La.App. 3d Cir.6/05/02) 819 So.2d 413, 417 (citing Black’s Law Dictionary 1388 (6th ed.1990)).
 A cause of action for defamation arises out of La. C.C. art. 2315. Defamation involves the invasion of a person’s interest in his or her reputation and good name. To maintain a cause of action for defamation, a plaintiff must prove: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. If any one of these required elements is lacking, plaintiffs cause of action fails. Starr v. Boudreaux, 07-0652, p. 5 (La.App. 1st Cir.12/21/07), 978 So.2d 384, 389. Moreover, the “publication” element of a defamation action requires publication or communication of defamatory words to someone other than the person defamed. Wisner v. Harvey, 96-0195, p. 4 (La.App. 1st Cir.11/8/96), 694 So.2d 348, 350.
Based on the evidence submitted in support of the motion for summary judgment, particularly Mr. Sova’s petition with the attached notices and the affidavits of Mr. Sova and Mr. Alford, State Farm sufficiently pointed out that there is no factual support for Mr. Sova’s claim of defamation. The evidence presented indicates that the notices regarding the violations and assessments of fines and penalties were sent directly to Mr. Sova, so the publication element of a defamation action cannot be established.
Nor can the mere filing of the liens by the Association be a basis for defamation. Damages based on claims of wrongfully filed liens are not awarded unless the wrongful lien recordation was made in bad faith or with malice. Compadres, Inc. v. Johnson Oil and Gas Corp., 547 So.2d 382, *874 390 (La.App. 3d Cir.1989). But again, the Association cannot be said to have acted in bad faith or with malice, since the filing of the liens was done with the advice of counsel. | Accordingly, there is no genuine issue of material fact regarding whether Mr. Sova’s remaining claims constitute a personal injury such that his claims would be covered under the Business Liability provisions of the policy issued to the Association.
Thus, the only other provision of the Association’s policy under which Mr. Sova can seek coverage for his claims would be under the Optional Coverage for Directors and Officers. In order for the claims to be covered under the Optional Coverage for Directors and Officers, the claims have to stem from “wrongful acts,” which are defined in the policy as “any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association.”
In his petition, Mr. Sova alleges that the Association “negligently executed an affidavit and caused to be filed a lien” and, through its officers and directors, was “negligent in creating a cloud on the title” of Mr. Sova’s property. However, negligence is defined as “[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others’ rights.” Black’s Law Dictionary 1056 (7th ed.1999).
Again, as discussed previously, the evidence presented in support of the motion for summary judgment shows that rather than failing to exercise the standard of care a reasonably prudent person would have under the circumstances, the Association acted with proper care by consulting with and involving legal counsel in its enforcement actions against Mr. Sova. While Mr. Sova may allege that the Association acted negligently, on a motion for summary judgment, he cannot merely rely on the allegations of his petition once State Farm made a prima facie showing that the Association purposefully and intentionally filed the liens 117against Mr. Sova’s property as a privilege to secure payment of the fines and penalties levied against him. La. C.C.P. art. 966(C)(2); see also LaFever v. Whitely, 613 So.2d 1007, 1009 (La.App. 1st Cir.), writ denied, 614 So.2d 64 (La.1992) (“The mere addition of the word ‘negligently’ to the allegations of [a] petition does not change the facts alleged therein... .”). Thus, there appear to be no genuine issues of material fact presented in regard to whether the Association committed wrongful acts such that coverage would be proper under the Optional Coverage for Directors and Officers Liability.
CONCLUSION
Based on our de novo review of the summary judgment granted by the trial court, we find no genuine issue of material fact presented on the issue of whether the policy issued by State Farm to the Association provides coverage for the claims asserted by Mr. Sova against the Association. Accordingly, we affirm the summary judgment and cast all costs of this appeal to the appellant, Thomas E. Sova.
AFFIRMED.
KUHN, J., concurs in result.
WHIPPLE, J., dissents and assigns reasons.

. According to the Association bylaws, "[t]he term 'Restrictions' shall mean and refer to the Declaration of Covenants and Restrictions for The Cove and Creation of Security Fence Servitude recorded as Original 261, Bundle 10474 ... and any declarations of obligations, covenants, restrictions, servitudes and conditions under which the Association has expressly accepted the duties and obligations for administration and enforcement.”

. It is not asserted that any of Mr. Sova's claims are for property damage, so our consideration of the classification of Mr. Sova's claimed injuries will be limited to those of bodily, personal or advertising injury.

. We note that the Louisiana Supreme Court specifically held that mental anguish that rises to the level of severe and debilitating mental pain anguish is compensable as bodily injury under similar definitions of bodily injury as provided in this case.