PARRO, J.
 

 12Roland Lewis and his wife, Katina Lewis, individually and on behalf of their minor children, Rolando and Romash (collectively, Lewis), appeal a summary judgment in favor of First Financial Insurance Company (First Financial), the liability insurer of Rajeh & Imn, Inc., d/b/a Ragusa’s Meat Market (Ragusa’s), dismissing Lewis’s claims on the basis that exclusion clauses in the First Financial policy precluded coverage for personal injuries Lewis sustained in Ragusa’s parking lot. For the following reasons, we reverse the judgment and remand this case to the district court.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 At approximately 5:45 p.m. on December 5, 2004, Lewis was in the parking lot of Ragusa’s when gunfire erupted; he was shot in the right knee by a stray bullet and fell to the ground. Geri Chong, who was in her parked car near him, tried to escape the gunfire by driving away, hitting Lewis with her vehicle in the process and dragging him sixty-five feet onto an adjoining
 
 *253
 
 street.
 
 [1]
 
 As a result of the shooting and the car accident, Lewis suffered severe injuries, allegedly including multiple fractures to his spine, ribs, pelvis, right scapula, and femur, plus liver lacerations and lung and chest contusions; he was hospitalized for almost a month and had at least eight surgical procedures.
 
 [2]
 

 In July 2005, Lewis sued Imn Jabbar and Steve Ayyad, claiming they were the owners and custodians of Ragusa’s. He alleged that after buying groceries, he left the store and was shot while on Ragusa’s premises. He claimed he was an innocent bystander to the shooting and that the driver of the car that ran over him and dragged him onto the street was also an innocent bystander who was trying to escape the gunfire. Lewis claimed the store owners knew there had been violent criminal activity near and on Ragusa’s premises, but they did not protect Ragusa’s customers with proper security and lighting. In an amending petition, Lewis alleged that Rajeh & Imn, Inc., a domestic corporation, was an additional owner of Ragu-sa’s and that First | ¡¡Financial was Ragu-sa’s insurer under a commercial general liability (CGL) policy.
 

 First Financial moved for summary judgment, supporting its motion with a certified copy of its CGL policy and asserting that an assault and battery exclusion in the policy precluded coverage. Lewis opposed the motion, arguing that most of his injuries were not attributable solely to the gunshot wound, but were due to being hit and dragged by the fleeing car. Lewis contended that lack of proper lighting was the fault of Ragusa’s owners and was a cause of his injuries, since the driver could not see him due to poor lighting in the parking lot.
 
 [3]
 
 First Financial filed an additional memorandum in support of its motion, attaching a copy of the police report and claiming the auto exclusion also applied.
 
 [4]
 

 According to the minutes of the court, in a hearing on December 3, 2007, several exceptions relating to insufficiency of service filed by various defendants were argued and dismissed as moot. First Financial’s motion for summary judgment was reassigned for hearing on March 3, 2008.
 
 [5]
 
 After hearing arguments that day, the court stated:
 

 No question whatsoever that the policy excludes bodily injuries or damages arising out of an assault and battery. I think that the shooting falls squarely within that.
 

 Because so many of Lewis’s injuries were not related to the gunshot wound, the court also discussed the auto exclusion, noting that:
 

 [M]y reading of the policy and applying it to the facts of this case, as well as the endorsement, the policy just does not seem to apply to any auto accident such as in this case. It’s a CGL policy, and I think under the facts of this case, Mr.
 
 *254
 
 Lewis’s claim would be against Ms. Chong and Ms. Chong’s insurer, the liability insurer of the vehicle she was driving, as opposed to First Financial and its CGL policy. And that’s even assuming I accept the premise that the lights in this case or the lack thereof were a contributing factor. So the Court will grant the motion for summary judgment as to First Financial, dismissing plaintiffs’ claims as against First Financial, with prejudice, at plaintiffs’ costs.
 

 A judgment incorporating these rulings was signed March 25, 2008, and Lewis appealed that judgment.
 

 |,.APPLICABLE LAW
 

 An appellate court reviews a district court’s decision to grant a motion for summary judgment
 
 de novo,
 
 using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 689 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E);
 
 Bilbo for Basnaw v. Shelter Ins. Co.,
 
 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694,
 
 writ denied,
 
 97-2198 (La.11/21/97), 703 So.2d 1312.
 

 Article 967 of the Louisiana Code of Civil Procedure describes the type of documentation a party may submit in support of or in opposition to a motion for summary judgment.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181 (La.2/29/00), 755 So.2d 226, 231. In accordance with Article 967, sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith in order to be considered by the court. A document that is not an affidavit or sworn to in any way, or is not certified, is not of sufficient evi-dentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact.
 
 Sanders v. J. Ray McDermott, Inc.,
 
 03-0064 (La.App. 1st Cir.11/7/03), 867 So.2d 771, 775. If the other criteria of Article 967 are met, evidence submitted as attachments to a memorandum in support of or in opposition to the motion for summary judgment may properly be considered by the court.
 
 Aydell v. Sterns,
 
 98-3135 (La.2/26/99), 731 So.2d 189, 189-90. Affidavits in support of or in opposition to motions for summary judgment must be filed into the record in order for the affidavits to be part of the record on appeal.
 
 See
 
 LSA-C.C.P. art. 966(B);
 
 Hopper v. Crown,
 
 560 So.2d 890, 892 (La.App. 1st Cir.1990). An affidavit filed into the record as part of the support for or opposition to a motion for summary judgment is part of the record on appeal, which the court of appeal may consider.
 
 Boland v. West Feliciana Parish Police Jury,
 
 03-1297 (La. App. 1st Cir.6/25/04), 878 So.2d 808, 814,
 
 writ denied,
 
 04-2286 (La.11/24/04), 888 So.2d 231.
 

 When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion.
 
 See
 
 LSA-C.C.P. art. 966(C)(2);
 
 Buck’s Run Enterprises, Inc. v. Mapp Const., Inc.,
 
 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some exclusion applies to preclude coverage.
 
 See McMath Const.
 
 
 *255
 

 Co., Inc. v. Dupuy,
 
 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 681,
 
 writ denied,
 
 04-3085 (La.2/18/05), 896 So.2d 40.
 

 An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code.
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Words and phrases used in a policy are to be construed using them plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning.
 
 See
 
 LSA-C.C. art.2047. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written.
 
 See
 
 LSA-C.C. art.2046.
 

 The purpose of liability insurance is to afford the insured protection for damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer’s obligation is strictly construed against the insurer, and if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
 
 Reynolds,
 
 634 So.2d at 1183. However, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.
 
 Id.
 
 The rule of strict construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Nor does pit authorize courts to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language.
 
 Doiron v. Louisiana Farm Bureau Mut. Ins. Co.,
 
 98-2818 (La.App. 1st Cir.2/18/00), 753 So.2d 357, 363.
 

 DISCUSSION
 

 Before discussing the merits of this appeal, we must consider an issue raised in First Financial’s brief to this court, which concerns the lack of any evidence in the record in opposition to its motion for summary judgment. Lewis has referred to various affidavits in his appellate brief; however, neither his opposition memorandum nor any affidavits or other documentation that may have been attached to it are in the record that was sent to this court. A telephone call from our clerk of court to the clerk of the district court confirmed that those documents were never filed into the record at the district court. This court cannot receive or consider any evidence outside of the record on appeal. Louisiana Code of Civil Procedure article 2132, which permits the correction of evidence which was actually introduced at trial, does not permit introduction of new evidence after the transcript of the record is filed in the appellate court. Moreover, the court of appeal has no jurisdiction to receive new evidence.
 
 Nickens v. Patriot Home Systems,
 
 97-0291 (La.App. 1st Cir.2/20/98), 708 So.2d 1184, 1186. Therefore, we must analyze the substantive issues in this case without the benefit of any evidence that may have been submitted to the district court by Lewis with his opposition memorandum, but was not filed into the record. Additionally, as admitted by First Financial in its brief to this court, the police report submitted in support of its motion was not authenticated or sworn to in any way. Therefore, we also cannot consider that report in evaluating the summary judgment. Accordingly, the only evidence other than the pleadings for this court to review is First Financial’s CGL policy, on
 
 *256
 
 which the named insured is Rajah & Imn, Inc., d/b/a Ragusa’s Meat Market.
 

 Lewis argues that the court erred in concluding that the auto exclusion clause of the policy excludes coverage under the facts of this case.
 
 [6]
 
 An endorsement to the auto 17exclusion states, in pertinent part:
 

 This insurance does not apply to:
 

 * * *
 

 (2) “Bodily injury” or “property damage” arising out of any “auto”
 

 ⅜
 
 *
 
 *
 

 This exclusion applies to “bodily injury” or “property damage” arising out of any aircraft, “auto” or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insuredf.]
 

 This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by an insured.
 

 This exclusion does not apply to:
 

 * * *
 

 (c) Parking an “auto” on, or on the ways next to, premises you own or rent, provided the “auto” is not owned by or rented or loaned to you or the insured and further provided that you are not in the “auto”, trucking, and cartage or livery business or in the business of parking or storing “autos”[.]
 

 Lewis claims his injuries did not arise solely out of the use of the auto. Rather, he claims that Ragusa’s liability stems from its failure to install and properly maintain sufficient lighting for drivers to see patrons in the store’s parking lot. He contends Louisiana courts have held that policy exclusions for automobile-related injuries are inapplicable when the particular accident resulted from more than one cause. Therefore, he argues that coverage would exist for this cause.
 

 In support of his position, Lewis cites
 
 LeJeune v. Allstate Ins. Co.,
 
 365 So.2d 471 (La.1978), in which a deputy sheriff negligently failed to secure an intersection during a funeral procession, resulting in an automobile accident that killed a passenger in the hearse. Because the damages arose out of the breach of the deputy’s law enforcement duties, the auto exclusion clause did not apply and coverage existed under the CGL policy. Similarly, in
 
 Manuel v. Luckett,
 
 577 So.2d 203 (La.App. 1st Cir.),
 
 writ denied,
 
 580 So.2d 378 (La.1991), an auto exclusion was held not to preclude coverage under a general liability policy when the injuries were partly attributable to negligence independent of and in addition to the auto use when a sheriffs deputy who made |san emergency radio call gave out an incorrect code for the call. We note that in both of these eases, the automobiles involved in the accidents were not owned by the defendants, nor had the defendants allowed the use of those automobiles.
 
 [7]
 

 
 *257
 
 First Financial contends that the rationale of
 
 Picou v. Ferrara,
 
 412 So.2d 1297 (La.1982) is applicable to this case. In Picou, the district court determined there was coverage for claims based on the defendant employer’s negligence in hiring an incompetent driver; the plaintiff had been injured when his motorcycle was struck by an automobile owned and operated by the defendant employee, who was on an errand for his employer at the time of the accident. The court of appeal affirmed the judgment. In reversing that decision, the supreme court reasoned that because the use of the automobile, a risk excluded from the policy, was a common and essential element in the plaintiffs liability theories of negligent supervision and negligent en-trustment, the policy exclusion must be upheld.
 
 Picou,
 
 412 So.2d at 1300.
 

 In the case before us, the alleged breach of duty by Ragusa’s is failing to provide sufficient lighting so vehicle drivers can see patrons in its parking lot and avoid hitting them. Claiming that the use of the automobile is an essential element in this theory of liability, First Financial asserts the court correctly upheld the auto exclusion. First Financial also cites this court’s recent case of
 
 Simmons v. Weiymann,
 
 05-1128 (La.App. 1st Cir.8/23/06), 943 So.2d 423, in which a negligent supervision claim was asserted against a homeowner who allowed neighbors’ children to use his all-terrain vehicle (ATV), and children riding on the ATV were injured when it was involved in an accident. Distinguishing the
 
 Frazier
 
 case, in which the injured child was not using the vehicle, this court held that under the facts in
 
 Simmons,
 
 when the liability clearly arose out of the use of the defendant’s ATV by the children, the auto exclusion in the defendant’s homeowner’s policy applied.
 
 See Simmons,
 
 943 So.2d at 429, and cases cited therein.
 

 We note, however, that Lewis, the injured plaintiff in this case, was not using the vehicle when the accident occurred. Moreover, the automobile causing his injuries |flwas neither owned by the defendants, nor was it being used with the defendants’ permission. These factors suggest that the auto exclusion should not be applied to preclude coverage. Additionally, in this case, the involvement of an automobile is not a common and essential element of Lewis’s claim that Ragu-sa’s failure to provide sufficient lighting in the parking lot contributed to the occurrence of the accident. Insufficient lighting might cause patrons to be injured in other ways not involving an automobile, such as tripping over uneven surfaces in the parking lot. Therefore, this case can be distinguished from
 
 Picou
 
 on that basis. The type of negligence alleged against Ragu-sa’s in this case is independent of and in addition to any auto use or involvement, as was the situation in
 
 Manuel,
 
 577 So.2d at 208.
 

 We are mindful that the auto liability exclusion in First Financial’s policy uses slightly different wording from the exclusions discussed in much of the above-cited jurisprudence. The auto exclusion endorsement in this case simply states that the insurance does not apply to bodily injury “arising out of any ‘auto’ it is not premised on “use” of an automobile. However, we believe the analysis of the above-cited jurisprudence is still applicable, because the negligence alleged against Ragu-sa’s — insufficient lighting in the parking lot — does not involve an automobile in any way. Because that negligence could cause other types of accidents and injuries, the involvement of an auto is not essential to the asserted claim. We conclude, therefore, that because the type of negligence asserted by Lewis against Ragusa’s was independent of and in addition to any automobile involvement, the auto exclusion in
 
 *258
 
 First Financial’s policy does not preclude coverage in this case.
 
 [8]
 
 Accordingly, the district court erred in granting summary judgment in favor of First Financial and dismissing Lewis’s claims against it.
 
 [9]
 
 Having reached this determination, we pretermit discussion of the parties’ other arguments.
 

 ^CONCLUSION
 

 For the above reasons, the judgment of March 25, 2008, granting summary judgment in favor of First Financial and dismissing all of Lewis’s claims against it is reversed. This case is remanded to the district court for further proceedings. All costs of this appeal are assessed against First Financial.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . It is unclear whether Ms. Chong or an acquaintance was actually driving the vehicle when the incident occurred. The gunman was apparently not identified, and Ms. Chong was not named as a defendant in this lawsuit.
 

 [2]
 

 . These injuries are not detailed in the record, but are described in Lewis's brief to this court.
 

 [3]
 

 . We are aware of Lewis’s opposition and its content only on the basis of the briefs filed in this court; neither the opposition memorandum nor any attached affidavits are in the record.
 

 [4]
 

 . The police report was not certified or sworn to in any way.
 

 [5]
 

 . Jabbar also filed a motion for summary judgment, which was heard the same day and was denied.
 

 [6]
 

 . Lewis did not assign as error the court's conclusion that the assault and battery exclusion also applies and precludes coverage for the injuries caused by the gunshot.
 

 [7]
 

 . In
 
 Frazier v. State Farm Mut. Auto. Ins. Co.,
 
 347 So.2d 1275 (La.App. 1st Cir.),
 
 writ denied,
 
 351 So.2d 165 (La.1977), despite an auto ex-elusion, this court allowed a cause of action for negligent supervision against the defendant’s homeowner’s insurance company when a child was run over by a car driven by the defendant's daughter while the defendant babysat the child.
 

 [8]
 

 . Of course, we express no opinion on whether Lewis will be able to establish that insufficient lighting was a causative factor in the accident and his resulting injuries.
 

 [9]
 

 . This opinion does not affect the district court's application of the assault and battery exclusion to preclude coverage of the injuries to Lewis caused by the gunshot, as that conclusion was not assigned as error.