Mildred A. JENSEN, Respondent,

v.

ALLSTATE INSURANCE COMPANY,
Appellant,

and

Dwight Douglas, Personal Representative of the Estate of Woodrow W. Jensen, Deceased, Respondent.

No. WD 72266.

Missouri Court of Appeals,
Western District.

July 19, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 2011.

Application for Transfer Denied
Oct. 25, 2011.

Robert J. Luder and John Vaught, Overland Park, KS, for appellant.

Bruce Alan Copeland, Joplin, MO and Neal Stauffer, Tulsa OK, for respondents.

Division Four: LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and GREGORY B. GILLIS, Sp.J.

JAMES M. SMART, JR., Judge.

Allstate Insurance Company ("Allstate") appeals a judgment in favor of Mildred Jensen in an Equitable Garnishment Action in the amount of $50,000. Allstate

contends that the trial court erred in awarding judgment in an amount that nullifies the effect of the "household exclusion" in the policy. Allstate contends that the partial exclusion unambiguously applies to Mildred and limits her recovery to the $25,000 she has already received from Allstate. We agree. We reverse the judgment of the trial court.

### Statement of Facts

On July 2, 2004, Woodrow Jensen and his wife, Mildred Jensen, were involved in an auto accident with an ambulance while Woodrow was driving. Mildred was injured, and Woodrow died as a result of the accident. Mildred and Woodrow were both named insureds under a motor vehicle policy issued by Allstate Insurance Company, which was in effect at the time of the accident. The policy provided $50,000 of liability coverage for bodily injury per person.

Shortly after that accident, Mildred, as a claimant, contended that her husband's negligence caused her injuries. She demanded the $50,000 policy limits (for liability) from Allstate. Allstate offered $25,000 as its limit of liability, noting that the policy included a "household exclusion" providing that liability coverage for claims of household members was capped at the $25,000 minimum required by the Missouri Motor Vehicle Financial Responsibility Law ("MVFRL").

The policy stated it was a "legal contract between you and us." The portion of the policy listing "definitions used throughout the policy" included:

2. "Allstate," "We," "Us," or "Our" means the company shown on the policy definitions.

. . . .

11. "You or Your" means the policyholder named on the Policy Declarations and that policyholder's resident spouse.

The portion of the policy (Part 1) dealing specifically with **liability coverage** states that, in return for the payment of premiums:

Allstate will pay damages which an insured person is legally obligated to pay because of

1. **bodily injury** sustained by any person, and

2. damage to, or destruction of, property, including loss of use.

Part 1 also included the following definition for that part of the policy:

"Insured Person(s)" means:

1. While using **your insured auto:**

   a. **you,**

   b. any **resident,**

   c. and any other person using it with your permission.

Then the "**Exclusions—What is Not Covered**" portion of Part 1 included, *inter alia,* the following:

Allstate will not pay for any damages an insured person is legally obligated to pay because of:

1. **bodily injury** . . . resulting from the [use] of the insured auto by any person as an employee of the United States government while acting within the scope of that employment. . . .

. . . .

3. **bodily injury** or property damage arising out of **auto** or motor vehicle business operations. . . . However, this exclusion does not apply to **you, resident** relatives, partners or employees of the partnership in which you or a resident relative are a partner, when using **your insured auto.**

4. bodily injury or property damage arising out of the use of a non-owned auto in any business or occupation of an insured person. However, this exclusion

does not apply while **you, your** chauffeur, or domestic servant are using an auto or trailer.

. . . .

6. bodily injury to an employee of any insured person arising out of or in the course of employment.

7. bodily injury to a co-worker injured in the course of employment. This exclusion does not apply to **you.**

8. **bodily injury** to any person related to an **insured person** by blood, marriage, or adoption and residing in that person's household. This exclusion applies only to the extent that the limit of liability for this coverage exceeds the minimum limit of liability required by the Financial Responsibility Law of Missouri.

Relying on the household exclusion, Allstate refused to pay the $50,000 and offered to settle the claim for the $25,000 step-down limit it believed applicable under the above provision.

Mildred rejected Allstate's position and filed suit in the Newton County Circuit Court against her husband's estate, of which she was presumably the primary beneficiary. Mildred claimed injuries and damages resulting from the negligence of Woodrow. On March 25, 2009, the circuit court entered a judgment in favor of Mildred in the amount of $616,000 against Woodrow's estate. The court entered judgment against the estate in that amount, plus costs and post-judgment interest.

Mildred then commenced a statutory garnishment proceeding in the Circuit Court of Jackson County, pursuant to section 379.200,[1] against Allstate to pursue her claim of $50,000 under the policy on June 19, 2009. Section 379.200 provides that upon the recovery of a final judgment for bodily injury, if the defendant in such action was insured against such claim, the judgment creditor is entitled to apply the insurance to the satisfaction of the judgment; and if the judgment is not satisfied within thirty days, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment. Woodrow's estate also brought a claim against Allstate, claiming breach of duty to defend and bad faith failure to settle. As to the equitable garnishment claim, Mildred and Allstate submitted cross-motions for summary judgment for determination of the insurance coverage issue. Allstate and Mildred submitted the issues on stipulated facts. On December 17, 2009, the Jackson County Circuit Court entered judgment for plaintiff, determining that $50,000 was the amount that was due to Mildred under the policy because $50,000 was the per person limit of liability.

The trial court's reasoning is set out in the judgment. In pertinent part, the judgment stated, *inter alia:*

5. The policy's household exclusion states:

Allstate will not pay for damages an **insured person** is legally obligated to pay because of:

. . . .

8. **bodily injury** to any person related to an **insured person** by blood, marriage, or adoption and residing in that person's household. This exclusion applies only to the extent that the limit of liability for this coverage exceeds the minimum limit of liability

1. Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2010 Cumulative Supplement.

required by the Financial Responsibility Law of Missouri.

The terms in boldface type are defined in the policy. The term "any person" is not defined in the policy.

6. By its express terms Allstate's household exclusion does not exclude coverage to **"you"** or **"your."** Because the policy defines **"you"** and **"your"** to mean the policyholder named on the Policy Declarations and because Mildred Jensen is named as such on the Policy Declarations, the household exclusion does not apply to the bodily injuries of Mildred Jensen.

7. In addition, in construing the terms of Allstate's policy, this Court must apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolve ambiguities in favor of the insured. *Jones v. Mid–Century Insurance Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009).

8. Based on that standard, this Court finds, in the alternative, that when analyzing the term "any person" in the context of the whole policy and Plaintiff's injuries, it becomes ambiguous. This result stems from the policy itself. The Allstate policy specifically designates Mildred Jensen with the following defined terms: **"you," "your"** and **"insured person."** Since there is no definition of "any person," a lay person who purchased this policy could reasonably find there to be two different interpretations. One could assume "any person" to be an all encompassing term or that it is interpreted reasonably as "any person" other than those individuals specifically defined by the policy's definitions. Accordingly, the policy language is open to two interpretations-either coverage or noncoverage. Hence, there is an ambiguity because there is "uncertainty of meaning."

9. Because this Court must construe an insurance policy against the insurer and in favor of the insured, it therefore finds that Allstate's household exclusion is ineffective to limit coverage to its insured, Mrs. Jensen.

10. *Versaw v. Versaw*, 202 S.W.3d 638 (Mo.App. S.D.2006), controls the outcome of the issues presented to this Court by the parties. Allstate's reliance on *Kearbey v. Kinder*, 972 S.W.2d 575 (Mo.App.1998), is misplaced and is not reasonable.

11. Allstate's policy provides $50,000 of coverage for Mildred Jensen's injuries.

The court entered judgment accordingly as to the Jensen–Allstate claim.

The next day, Allstate filed a Motion to Amend or Modify Judgment, disagreeing with the court's determination of coverage and the language of the court's judgment, particularly the reference in the judgment characterizing Allstate's position as "unreasonable." The circuit court did not rule on Allstate's motion within 90 days; thus, Allstate's motion was deemed overruled and final. Rule 81.05(a)(2)(A).[2] Although there remained another claim in the case between the estate (through the personal representative) and Allstate, the trial court found no just reason for delay, pursuant to Rule 74.01(b), and found the Jensen–Allstate judgment final and subject to immediate appeal. Allstate appeals.

### Point One

■ Allstate's first point does not allege trial court error. Instead, it alleges

---

**2.** All rule references are to Missouri Rules of Civil Procedure 2010, unless otherwise indicated.

that this court has jurisdiction of the appeal because of the trial court's determination under Rule 74.01 that there was no just reason for delay, even though not all claims in the case were resolved in the court's judgment as to Mildred's garnishment claim against Allstate. Pursuant to Rule 74.01(b)'s finality exception, "[a] trial court may enter a judgment on less than all claims and certify that there is 'no just reason for delay.'" *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997) (internal citations omitted). The designation by the trial court that its order is final and appealable is not conclusive, but is effective only when the order disposes of a distinct judicial unit. *Id.* A "judicial unit for an appeal" has the settled meaning of a "final judgment on a claim." *Id.* The parties litigating the equitable garnishment action (Mildred versus Allstate, with Woodrow's estate as a nominal defendant) are not the same as the parties litigating the bad faith claim (Woodrow's estate versus Allstate). Further, the claim against Allstate for bad faith is affected by the issue of whether the trial court reached the correct decision on the issues that are being appealed.[3] Therefore, we do not disagree that the judgment on the garnishment claim may be treated as final; nor does any party differ. We therefore determine that we have authority to proceed with the appeal.

### Point Two

Allstate contends that the trial court erred in determining that Allstate's liability under the policy was $50,000, as opposed to $25,000, because, Allstate says, Exclusion 8 of the policy unambiguously applies to Mildred in that Mildred's bodily injuries are "damages that an **insured person** [Woodrow] is legally obligated to pay

because of bodily injury to any person related to an **insured person** [Woodrow] by marriage and residing in that person's household."

■ The basic facts in this case are undisputed. The interpretation of an insurance policy and the determination whether coverage and exclusion provisions are ambiguous are questions of law. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010). Where, as here, the trial court granted summary judgment, we review the trial court's ruling granting summary judgment in interpreting the insurance contract *de novo*. *Id.*

■ This court interprets insurance contracts by applying general rules of contract interpretation. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Id.* (quoting *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. banc 1993)). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns*, 303 S.W.3d at 509; *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). If an ambiguity exists in an insurance policy, the court must construe the policy in favor of the insured. *Burns*, 303 S.W.3d at 511. However, "where insurance policies are unambiguous, they will be enforced as written." *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

■ "When an insurance company relies on a policy exclusion to assert non-

---

**3.** The relief requested and claimed by Mildred in her Petition for Equitable Garnishment relates solely to the claim for a declaration of

the amount of coverage available under the policy, which was fully resolved by the circuit court's December 14, 2009 Judgment.

coverage, it has the burden of proving that such exclusion is applicable, and we will construe the exclusion clause strictly against the insurer." *Oakley Fertilizer v. Cont'l Ins. Co.*, 276 S.W.3d 342, 351 (Mo. App.2009) (internal citations omitted). Moreover, in construing the language of an insurance policy, this court applies the meaning which would be attached by "an ordinary person of average understanding" when purchasing insurance, resolving ambiguities in favor of the insured.[4] *Burns,* 303 S.W.3d at 509.

## Household Exclusion

▆▆▆▆ This case involves a "household exclusion," described in *Kearbey v. Kinder* as a "limitation or exclusion from providing coverage for bodily injury to the insured or anyone connected with the insured by blood or affinity." 972 S.W.2d 575, 577 n. 1 (Mo.App.1998). In *Halpin v. American Family Mutual Insurance Co.*, 823 S.W.2d 479, 482–83 (Mo. banc 1992), the Supreme Court acknowledged that a household exclusion provision could limit coverage to the amount of minimal coverage required by the MVFRL, which is currently $25,000 per person.

### *Kearbey v. Kinder*

Appellant Allstate argues that the plain language unambiguously excludes the claim to the extent that the demand exceeds $25,000. Defendant relies primarily on *Kearbey v. Kinder,* 972 S.W.2d 575 (Mo.App.1998), in which the court enforced the household exclusion and found that the exclusion was not ambiguous. In that case, Plaintiff Kara Kearbey, a minor residing with her parents, was occupying as a passenger a vehicle owned by Kara's father and driven by Ms. Kinder with the permission of Kara's father. Ms. Kinder negligently drove the vehicle, causing a collision. The vehicle was insured by Progressive Insurance Company. The action arising out of the collision included a claim for injuries on behalf of Kara and against Ms. Kinder. Also joined in the action were claims against Progressive by Kara's parents for medical expenses and loss of their daughter's services due to the injury. The parents contended in the action that there was no exclusion in the policy that would bar their derivative claims as parents.[5] The policy provided for liability limits of $50,000/$100,000.[6] The policy specified that the liability limit for "each person" includes all derivative claims flowing from the injuries to the person injured. Also, the policy had a household exclusion clause (identical to the Allstate provision in this case) excluding claims for:

**Bodily injury to any person related to an insured person by blood, marriage, or adoption and residing in that person's household. This exclusion applies only to the extent that the limit of liability for this coverage exceeds the minimum limit of liability required by the financial responsibility law of Missouri.**

After the case was tried on stipulated facts, the trial court awarded Kara $25,000 against Ms. Kinder for her personal injuries. The court also awarded the parents $25,000 against Ms. Kinder for their derivative claims, including medical expenses and loss of services. The court held with

---

4. This rule is known as *"contra proferentem"* and is applied more rigorously to insurance contracts in Missouri than other types of contracts. *Mansion Hills Condo. Assoc. v. Am. Family Mut. Ins. Co.,* 62 S.W.3d 633, 637 (Mo.App.2001).

5. The claims were brought in three counts, with the third count a declaratory judgment claim.

6. $50,000 per person, $100,000 per accident.

respect to the parents' declaratory claim against Progressive that the insurer was *not* also liable under the policy (to pay the $25,000 judgment against Kinder for the derivative claims), because the "household exclusion" barred the parents' recovery under the policy. *Id.* at 577.

The parents appealed the trial court's ruling with regard to the "household exclusion" clause. The parents argued that the plain language of the "limits of liability" clause unambiguously provides $50,000 of liability coverage for both bodily injuries and derivative claims. *Id.* at 578. Also, they argued that the household exclusionary clause is not found in the "limits of liability" portion of the policy but is in the Amendatory Endorsement to the policy. *Id.* They argued that an ambiguity exists that requires a resolution in favor of the parents and against the insurer. *Id.*

The court stated that even though the plain language of the limits of liability provision afforded coverage, that one provision cannot be read in isolation, disregarding the Amendatory Endorsement, which is,

> unambiguously clear that [claims for] **"bodily injury to any person related to an insured person by blood, marriage or adoption and residing in that person's household ..."** are specifically excluded from coverage to the extent that any liability exceeds the minimum limit of liability required by the MVFRL.

*Id.*

The court in *Kearbey* thus found the household exclusion clause to be "clearly unambiguous," finding it effective to limit recovery of claims of household members to $25,000. *Id.* The household exclusion clause, combined with the policy language specifying that the liability limit as to "each person" includes all derivative claims as well as the injury claims themselves,

and the fact that the $25,000 to be paid for Kara's injuries exhausted the amounts due under the limitation supplied by the household exclusion clause, meant that the insurer was not obligated beyond the $25,000 awarded against Ms. Kinder for Kara's personal injuries.

The household exclusion clause in *Kearbey* is identical to the exclusion in this case. *Kearbey*, thus, is relied upon by Allstate as demonstrating that there is no ambiguity in the identical household exclusion clause in this case. Plaintiff Jensen, in contrast, relies on *Versaw v. Versaw*, 202 S.W.3d 638 (Mo.App.2006).

### Versaw v. Versaw

In *Versaw*, the decedent husband and the tort defendant wife were involved in a collision while defendant wife was driving. 202 S.W.3d at 641. The decedent's parents sued the defendant wife of the deceased for the wrongful death of decedent. *Id.* The vehicle, driven by the defendant wife, was covered by an insurance policy containing several "exclusion" clauses, including a "household exclusion" reading:

> **This [liability] coverage does not apply to ... Bodily injury ... to any person related to and residing in the same household with the operator.**

*Id.* at 641–43.

The insurer relied on the language of the household exclusion to deny liability coverage to the defendant wife after the parents obtained a consent judgment against the defendant. *Id.* at 642. The trial court sustained the parents' motion for summary judgment after they filed an execution and garnishment action to collect the liability insurance from the appellant. *Id.* The trial court ruled the insurer's household exclusion provision was not valid to exclude coverage because:

Exclusion No. 10 [the household exclusion] does not exclude coverage to "**you**" or "**your**." Under policy definition No. 13, "**you**" and "**your**" mean the policyholder named in the declarations and spouse, if living in the same household. [The] Versaw[s] are named in the declarations and each of them are "**you**" and "**your**." [The household exclusion] does not exclude coverage to "**you**" or "**your**." *Id.* The reviewing court in *Versaw* agreed with the trial court's decision in regard to the household exclusion provision.

The insurer in that case, like Allstate here, argued that under the plain language of the household exclusion, no coverage existed for the parents' claim, because the tort defendant and decedent were encompassed in the term "any person." *Id.* at 643. The insurer argued that because the term "any person" unambiguously includes the defendant and decedent when read and applied in context, the exclusion applies and the rules of contract interpretation for ambiguous language do not apply here. *Id.* The parents, however, like Mildred here, argued the policy was ambiguous because it generally defined "**you**" and "**your**" as the named policyholder and spouse, and, therefore, the "any person" language in the household exclusion was not effective to exclude from full coverage the claim based on decedent's death. *Id.* Such an attempt to characterize "any person" by the insurer, said the claimants, reveals ambiguities in the policy which must be construed in favor of the insured. *Id.*

The court said the rules of insurance contract interpretation require an examination of the household exclusion clause in the context of the entire policy. *Id.* at 643–44. As a result of looking at the entire policy, the court believed the mean-

ing of "any person" *became* ambiguous, because "the defined terms '**you**' or '**your**' or '**insured person**' [were] used throughout the policy exclusions to explain when decedent and defendant (as a class of persons) were excluded from the previously promised coverage." *Id.* at 644. The court found that the selective use of these terms throughout the policy and exclusions "could reasonably create the impression to a lay person who bought the policy that the defined phrases ... referred to a mutually exclusive class, separate and different than the 'any person' class." *Id.*

Reading the household exclusion in conjunction with the adjacent clauses, the court found that all of the clauses excluding a "class" of persons from coverage used either "**you/your**" or "**insured person**" to exclude coverage for the decedent and defendant, *except* Exclusion 10, the household exclusion. *Id.* at 644–45. The court held that "[a]t the very least, the policy is ambiguous as to whether Defendant is barred from coverage under the household exclusion[,] caus[ing] us to interpret the policy ... in a light most favorable to [the parents] and against Appellant." *Id.* at 645. Thus, the court found that the appellant owed coverage on the policy to the parents as a part of the garnishment action and upheld the trial court. *Id.*

### Allstate's Exclusion and "Any Person" Language

Here, the trial court relied on the ruling in *Versaw* to find that the language of the household exclusion did not apply to exclude Mildred from coverage. The trial court did not say that *Kearbey* was inapplicable or explain why it disregarded *Kearbey*.[7] Thus, we seek a basis by which to understand and reconcile these two cases.

---

7. *Kearbey*'s statement that the language of the

identical exclusion in that case was "unam-

The exclusion in *Versaw* referred to claims brought by "any person related to and residing in the same household with the operator." In *Kearbey,* the exclusion, like the one in this case, referred specifically to claims of any person living in the household and related to an insured person by "**blood, marriage or adoption.**" Perhaps one difference is that the ordinary reader would understand that many married couples purchase coverage under the *same* policy and that this exclusion is all about the family members living in the same household. Thus, a reference to "*any person* related by *marriage* " would appear on its face to apply primarily to a spouse bringing a liability claim against her or his spouse. There could easily be other people in the household related to the insured driver "by marriage," such as a step-child, but the most direct and obvious relationship by marriage is the husband-wife relationship. This is combined with the broad language "any person." This is one of several considerations.

A second factor is that in *Versaw* the term "any person" apparently did not show up anywhere else in the policy to give it greater context. *See Versaw,* 202 S.W.3d at 644.[8] Here, in contrast, the phrase appears not only in Exclusion 8 but also in the policy's insuring clause for liability coverage and multiple other places in the policy. In the insuring clause, it states that Allstate "will pay for damages which an insured person is legally obligated to pay because of . . . bodily injury sustained by *any person.*" (Emphasis added.) Mil-

dred, thus, is allowed coverage on the basis that she falls *within* the phrase "any person" in the insuring clause, although she contradictorily claims to fall *outside* that same phrase in Exclusion 8. We note also the appearance of "any person" at other places both within and without the liability section of the policy. For instance, Exclusion 1 of the liability section provides that Allstate will *not* pay for damages resulting from the use of the "insured auto by *any person* as an employee of the United States government [.]" (Emphasis added.) Identical uses of the phrase "any person" appear elsewhere in the exclusions applicable to the medical payments coverage, the uninsured motorist coverage, and the underinsured motorist coverage.

Another factor which seems to distinguish this case from *Versaw* is that here there are exclusions which, when they wish to exclude the policyholders from the scope of the exclusion, they clearly say so. For instance, Exclusions 3, 4, and 7 in the liability section all say that "this exclusion does not apply to **you**."

Under the analysis of the *Versaw* decision, if an ordinary, objectively reasonable person of average intelligence were reading the policy in this case and were looking for the word "**you**" to see if any exclusions were applicable to her claim, she would necessarily notice the word "**you**" appearing in Exclusions 1, 3, and 7 before she ever got to Exclusion 8. She would not need for the reference to "any person" in

---

biguously clear" was decided by the same court that decided similar language *was* ambiguous in *Versaw.* We know the court in *Versaw* did not forget *Kearbey,* because it cited *Kearbey* for one of its propositions. The author of the opinion in *Kearbey* was also on the panel in *Versaw.* The court in *Versaw* did not distinguish *Kearbey,* question *Kearbey,* or overrule *Kearbey.* Therefore, we assume that *Versaw* was not an overruling of *Kearbey.*

8. The liability clause in *Versaw* read, "[y]ou have this coverage if Bodily Injury Liability and Property Damage liability coverage is shown in the declarations. **We** [Appellant] will pay damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer.**" 202 S.W.3d at 644.

Exclusion 8 to say "this includes **you**." This is because she would recognize the clear pattern: if the exclusion did not intend to include her within the exclusion, the exclusion says so explicitly. Moreover, when she sees the phrase "any person" in Exclusion 8, she would see it not only that one time, but she would see it in the insuring clause ("bodily injury sustained by any person") with no mention that "this includes **you**" and in Exclusion 1, which refers to "any person" acting as an employee of the United States government, again without saying "this includes **you**." Exclusion 1, like Exclusion 8 later, never makes the statement that "this phrase includes '**you**.' " So the clear pattern is that the exclusions that do not apply to the policyholder *say* that they do not. Accordingly, the exclusions that make no mention of exempting the policyholders do *not* exempt the policyholders.

We believe that an ordinary person can see that a claim can be brought by "any person" (meaning "any person") and that coverage is excluded for "any person" engaged in United States government employment (meaning "any person" engaged in such employment). We believe that an ordinary reader can see that liability coverage is subject to the household exclusion limitation for claims of "any person related to an insured person by blood, marriage, or adoption and residing in that person's household." The ordinary reader would also notice that certain exclusions expressly say that the policyholder ("**you**") is not included within the terms of those certain other exclusions. They would also notice that this household exclusion contains *no* such statement of exemption.

When the ordinary reader turns to the other portions of the policy beyond the liability section, the reader will discover the same thing. He or she will discover, for instance, in the medical payments portion of the policy the same pattern is followed. Some exclusions *expressly* apply to the actions of the policyholder ("**you**"), some apply to "any person" (with no reference to "**you**"), and some make clear that the exclusion *generally* applies to "any person," but then *expressly* provides that the policyholder ("**you**") is exempted from the exclusion.[9] The same thing is true in the sections of the policy dealing with the uninsured motorist coverage.[10] The same thing is true in the sections of the policy dealing with the underinsured motorist coverage.[11]

When the ordinary person, in the context of the whole policy, reviews the exclusions as to liability claims, that person will note that the claim of "any person … related by … marriage" is excluded as to a claimed amount exceeding the minimum requirement of the MVFRL. That person will understand from a review of the entire policy that when "any person" appears by itself, without any qualifiers, it means "any person" and is not ambiguous at all *in the context of the **pattern** established in the drafting and setting forth of the exclusions, because those exclusions will say:*

> "**you** " when referring to the policyholders;
>
> "**insured person** " when referring to the policyholders plus any others who qualify within the definition; and
>
> "any person " when referring to any person.

---

**9.** See Exclusions 1, 4, 5, 7, and 8 in that section of the policy.

**10.** See Exclusions 1, 2, and 3 in that section of the policy.

**11.** See Exclusions 1 and 2 in that section of the policy.

Because the trial court, in trying to apply the principle of considering the particular language in light of the whole policy, failed to note the pattern established in the exclusions in the liability section and carried through in the remainder of the policy, and failed to note that the phrase "any person" appears multiple other places and means exactly *any person* without limitation except when it expresses a limitation, the court ended up with a strained interpretation. We seek to avoid an interpretation that is strained or inconsistent. *See Haggard Hauling & Rigging Co., Inc. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 401 (Mo.App.1993) (We do not permit "a strained interpretation of the language of the policy in order to create an ambiguity where none exists.").

The long and the short of it is that the exclusion is not ambiguous. The exclusion language can be understood as:

> Allstate will not pay for damages [Woodrow] is legally obligated to pay because of:

> **bodily injury to any person related to [Woodrow]** [12] **by blood, marriage or adoption and residing in [Woodrow's] household (subject to the limitation of the MVFRL).**

The language, read in isolation, and even more so when read in the context of the entire policy, is unambiguous. *See Kearbey*, 972 S.W.2d at 578. The trial court erred in finding an ambiguity.

### Point Three

Because of our decision with regard to Allstate's Point II on the household exclusion, Allstate's Point III, which was a con-

---

12. The severability clause of a standard automobile policy provides that the term "insured" refers to any person who qualifies as an insured, but the policy is applied separately to each such insured seeking coverage and

tingent point having to do with the wording of the judgment, is moot.

### Conclusion

We reverse the decision of the trial court.

All concur.

---

against whom a claim is brought. *See Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810 (Mo. banc 1985); *Baker v. DePew*, 860 S.W.2d 318, 320 (Mo. banc 1993).