# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1112

_____

Nicholas J. Minden; L.A.M., a minor, by and through her natural mother and next friend Lisa Minden; Daniel M. Minden, Jr., Individually and as Personal Representative of the Estate of Daniel M. Minden, Sr.; Shannon Minden

*Plaintiffs - Appellants*

v.

Atain Specialty Insurance Company

*Defendant - Appellee*

_____

No. 14-1116

_____

Nicholas J. Minden; L.A.M., a minor, by and through her natural mother and next friend Lisa Minden; Daniel M. Minden, Jr., Individually and as Personal Representative of the Estate of Daniel M. Minden, Sr.; Shannon Minden

*Plaintiffs - Appellees*

v.

Atain Specialty Insurance Company

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2015
Filed: May 26, 2015
_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.
_____

BEAM, Circuit Judge.

Nicholas Minden (Minden) appeals, and Atain Specialty Insurance Company cross appeals the district court's[1] order in this equitable garnishment and vexatious refusal to defend insurance coverage dispute. We affirm.

## I. BACKGROUND

In the early morning hours of April 5, 2009, Daniel Minden (Daniel) was struck by a vehicle driven by Curtis Lammert in a parking lot owned by and situated next to The Dry Dock tavern (Gannon's[2]) in St. Louis County, Missouri. A private birthday party for a St. Louis County police officer had been held at Gannon's earlier that evening and Daniel was a friend of the officer and an invited guest. Lammert was there at the invitation of Lammert's sister, who was a friend of another invited guest named Gene Mehrtens. At Gannon's closing, shortly before 1:00 a.m., Mehrtens was going to escort home another female guest named Sherri who appeared to be intoxicated. While in the parking lot, Lammert, who was also acquainted with Sherri, approached Mehrtens and insisted that he should take her home because Lammert was concerned that Mehrtens was going to take advantage of Sherri's intoxicated state.

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

[2]The Dry Dock is owned and operated by The Gannon Parker and Wooten Company.

Following a heated discussion at Sherri's car, Mehrtens threw the keys at Lammert and told Lammert to go ahead and take Sherri home. Lammert escorted Sherri to his pickup truck, where Lammert's girlfriend was also waiting. As the three drove out of the parking lot in Lammert's truck, Lammert stopped, got out of his truck, and attempted to lock Sherri's car via the remote key fob. Instead of locking it, however, he caused the car alarm to go off. Lammert began pushing buttons on the key fob, but was not immediately able to stop the noise. Mehrtens, Daniel, and perhaps others, began yelling unflattering remarks about Lammert's intelligence as Lammert struggled to turn off the car alarm. Daniel, who had left the bar from the rear entrance and was in the main parking lot carrying a tray of cupcakes leftover from the party, headed toward the remote parking lot located across the street from Gannon's. Once Lammert was able to silence Sherri's car alarm, Lammert got back in his pickup. Mehrtens testified in a deposition that Lammert looked "right at" Mehrtens, popped his clutch, and drove toward Mehrtens on the way out of the parking lot. Mehrtens was able to get out of the way, but Daniel apparently did not see Lammert coming. Another party guest attempted to pull Daniel out of the way, but was unsuccessful. Upon the initial contact with the right side of the pickup, Daniel was thrown in the air and landed in the street located between the remote parking lot and Gannon's main parking lot. As Lammert's vehicle exited the main parking lot into the street, the right side of the pickup again ran over Daniel's body lying in the street.

Daniel was transported to the hospital, and just over one month later, he died from complications due to the injuries. Lammert left the scene but turned himself into the police later that morning. He contended in his police interview that he saw Daniel in front of him, but that he thought a woman had pulled him out of the way before Lammert proceeded through the parking lot toward the street. He further contended that he did not intend to hit Daniel and that he was afraid to stop once he realized that he had hit someone. Another witness, the police officer in whose honor the birthday party was held, told investigators that Daniel was yelling at Lammert while Lammert attempted to negotiate the key fob, and that in the officer's opinion, Lammert hit

Daniel on purpose because of this. Sherri gave a statement to police that after Lammert hit Daniel and drove off, Lammert repeatedly stated that it was an accident and that he did not mean to hit the man.

Lammert was initially charged with assault and leaving the scene of an accident. When Daniel succumbed to his injuries, Lammert's assault charge was changed to involuntary manslaughter. Lammert pleaded guilty to the manslaughter and leaving-the-scene charges, and at his change-of-plea hearing, Lammert again maintained that he did not purposefully hit Daniel, but instead thought Daniel was out of the way. The trial court accepted[3] the plea and sentenced Lammert to seven years in prison on the manslaughter charge, and four years on the leaving-the-scene charge.

Minden brought wrongful death claims in state court against Lammert and premises liability and dram shop claims against Gannon's based upon the incident. Gannon's liquor liability insurer defended the dram shop claims, but the general commercial liability insurer, Atain, refused to defend the premises liability and negligence claims. Minden and Gannon's proceeded to mediation, and while Atain was invited to the mediation, it did not appear. All of the claims between Minden and Gannon's[4] were settled, and Minden received from Gannon's an assignment of any claim it might have against Atain based upon the failure to defend. Gannon's also agreed not to contest a consent judgment entered against it in state court on the premises liability action, and a $2 million judgment in state court was entered against Gannon's.

---

[3]Noting the discrepancy between the state's contention that it could show that Lammert could have avoided Daniel, and Lammert's contention that he thought Daniel was out of the way, the court asked Lammert if what the prosecuting attorney said was "for the most part true?" Lammert replied "[y]es."

[4]Minden ultimately dismissed the claims against Lammert.

Minden brought the present lawsuit against Atain, alleging equitable garnishment and a vexatious failure to defend and indemnify.[5] Atain alleges it did not defend or indemnify based upon two policy exclusions–an automobile exclusion precluding coverage for any injuries caused by automobiles, and an assault and battery exclusion. Upon cross motions for summary judgment, the district court ruled that the two exclusions did *not* apply to the facts of the underlying dispute and therefore entered summary judgment in favor of Minden on the equitable garnishment claim. Nonetheless, the district court granted summary judgment in favor of Atain on the vexatious-refusal-to-defend claim, finding that Atain's refusal was not "vexatious" under the circumstances, because the two exclusions arguably could have applied and coverage was a close call. Minden appeals the district court's ruling on the vexatious refusal issue, while Atain appeals the district court's conclusions regarding the applicability of the exclusions and the judgment entered on the equitable garnishment claim.

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo. Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015). Missouri substantive law applies to this diversity case, and our task is to predict how the Missouri courts would resolve the issues. Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir. 2007).

---

[5]Minden also initially alleged a count for bad faith refusal to defend; however, this count was dismissed because we have previously held that bad-faith-refusal-to-defend claims are not assignable under Missouri law. See Quick v. Nat'l Auto Credit, 65 F.3d 741, 746-47 (8th Cir. 1995).

## A.    Equitable Garnishment

Minden seeks equitable garnishment, a cause of action governed by statute in Missouri.    Missouri statutes provide that when a personal injury plaintiff has recovered a final judgment against a defendant for what should have been an insured loss, he is entitled to have insurance proceeds applied to satisfy the judgment.  Mo. Rev. Stat. § 379.200.  The action is a suit in equity against the insurance company to seek satisfaction of a judgment under an insurance policy.  Id.  The party seeking the judgment is in the shoes of the insured, so the insurer may raise the same defenses in an equitable garnishment action that it could have in an action by the insured.  Glover v. State Farm Fire and Cas. Co., 984 F.2d 259, 260 (8th Cir. 1993) (per curiam).  To collect a judgment through equitable garnishment, the plaintiff has the burden to show by substantial evidence that the claim is within the coverage provided within the insurance contract.  Heacker v. Safeco Ins. Co. of Am., 676 F.3d 724, 727 (8th Cir. 2012) (applying Missouri law).  However, if the insurance company relies on a policy exclusion to deny coverage, the insurance company bears the burden of proving that such exclusion is applicable, and we must construe the exclusion clause strictly against the insurer.  Jensen v. Allstate Ins. Co., 349 S.W.3d 369, 374-75 (Mo. Ct. App. 2011).  In addition, if the language of the policy is ambiguous and reasonably open to different constructions, the language will be construed against the insurer and as ordinarily understood by the lay person who bought and paid for the policy.  Pruitt v. Farmers Ins. Co., 950 S.W.2d 659, 664 (Mo. Ct. App. 1997).

Atain argues that it cannot be liable for equitable garnishment because the automobile exclusion and the assault and battery exclusion in Gannon's policy both exclude coverage for Minden's claims.  The auto exclusion provides that the insurance policy does not apply to: bodily injury arising out of any auto "whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured."  Further, the "exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment,

entrustment, permitting, training or monitoring of others by an insured." The district court found that while it was a "close question," the exclusion did not bar coverage because a lay person could reasonably have understood the exclusion to apply only to autos related to the insured, in other words, a car operated by or on behalf of Gannon's.

Given the above standard applicable to an insurance company seeking to exclude coverage, we agree with Minden and the district court that Atain cannot prove that the auto exclusion bars coverage here. Specifically at issue is the construction of the phrase "whether or not." Minden argues that the phrase simply modifies the insured's act of possessing the auto, and does not modify the term "any insured." Atain argues that the phrase means whether the insured owned/used the auto or whether the insured did not own/use the auto (which would include Lammert's use of his auto to injure Minden), and that the district court impermissibly removed the "whether or not" phrase from the policy.

The parties agree that no particular Missouri case is on point, but Minden cites a Louisiana case involving somewhat similar facts, and an identically worded exclusion. In Lewis v. Jabbar, 5 So. 3d 250 (La. Ct. App. 2009), the Louisiana Court of Appeals considered an insurance company's argument that the same auto exclusion barred coverage in a premises liability case brought by a grocery store patron injured by a vehicle in the parking lot. The Louisiana court noted that neither the injured victim, nor the owner of the store was using the auto, and the auto was not being used with the store owner's permission. Id. at 257. The court further found that the "common and essential element" of the premises liability claim against the grocery store did not involve use of an auto. Instead, allegedly improper lighting was the crux of the negligence claim against the insured. Id. Accordingly, the exclusion did not bar coverage. Id. at 257-58.

-7-

The instant matter is not directly on point with Lewis, as the crux of Minden's premises liability complaint does not involve improper lighting, but instead an unreasonably dangerous design that placed pedestrian patrons in harm's way while proceeding to the remotely located parking lot. Nonetheless, if the wording of the auto exclusion were as clear as Atain alleges, the Lewis court would not have had occasion to consider whether it applied in the circumstances alleged in that case and would have simply upheld the decision to bar coverage. As the district court noted, the auto exclusion could be interpreted as Atain urges, but also reasonably could be understood as Minden advocates. "A layperson, especially one purchasing general liability insurance for a bar whose premises included a parking lot, could reasonably have thought that the auto exclusion only excluded coverage for injuries arising out of an auto somehow connected to the insured." Minden v. Atain Specialty Ins. Co., No. 4:11CV01284, 2013 WL 5106519 at *8 (E.D. Mo. Sept. 12, 2013). In this situation, because the insurer is seeking to bar coverage by way of an exclusion, the "tie" goes to the insured, see Jensen, 349 S.W.3d at 374-75, and the auto exclusion does not bar coverage for Minden's premises liability claims.

With regard to the assault and battery exclusion, the policy states that it does not apply to any bodily injury arising out of "Assault and Battery committed by any Insured, any employee of any Insured or any other person;" or "Assault or Battery, whether or not caused by or arising out of negligent, reckless or wanton conduct of the Insured, the Insured's employees, patrons or other persons lawfully or otherwise on, at or near the premises owned or occupied by the Insured, or by any other person." The district court found that because Lammert pleaded guilty to manslaughter, a "reckless" mens rea crime rather than an intentional one, Atain could not rely upon the conviction to deny coverage, and there was enough other evidence in the record to lead to the conclusion that the act was not intentional. Accordingly, Atain could not meet its burden of proving the exclusion applied. Atain appears to argue that the convoluted wording of this "assault and battery" exclusion entitles it to exclude from

-8-

coverage acts caused by something less than intentional conduct. An examination of Missouri case law leads us to the conclusion that Atain's argument cannot prevail.

In Missouri, civil assault and battery both include the element of intent. <u>Phelps v. Bross</u>, 73 S.W.3d 651, 656 (Mo. Ct. App. 2002) (holding that an element of civil assault is intent to cause offensive contact); <u>Baltzell v. Van Buskirk</u>, 752 S.W.2d 902, 906 (Mo. Ct. App. 1988) (defining battery as an intentional tort which, "by definition, is not a cause of action for negligence"). If an intentional act is required before one can commit "assault and battery," we cannot fathom that Missouri courts would allow insurance companies to use the exclusion to bar coverage when there has been no intentional act that caused the initial injury. Unfortunately, though there are legions of Missouri cases discussing insurance policies with an "assault and battery" exclusion, none of them illuminate the precise issue here. The instant case does not present the usual tavern "assault and battery" scenario, which tends to involve either patrons injuring one another or bouncers forcibly removing patrons and shoving them. <u>See, e.g.</u>, <u>Trainwreck West Inc. v. Burlington Ins. Co.</u>, 235 S.W.3d 33, 36 (Mo. Ct. App. 2007); <u>Hunt v. Capitol Indem. Corp.</u>, 26 S.W.3d 341, 342 (Mo. Ct. App. 2000). These "assault and battery" cases generally focus on the identity of the person committing the assault and battery, not whether the act itself was an assault and battery. <u>Hunt</u>, 26 S.W.3d at 344 (discussing whether an assault and battery committed by fellow patron as opposed to a bar employee fell within the exclusion). With respect to the exclusion's reference to negligent or reckless conduct, cases analyzing both intentional and negligent conduct frequently do so in the context of whether a bar employee was negligent or reckless in allowing the initial assault or battery to happen–not whether the initial injury was caused by merely negligent conduct. <u>E.g.</u>, <u>Capitol Indem. Corp. v. Callis</u>, 963 S.W.2d 247, 249 (Mo. Ct. App. 1997) (holding that assault and battery exclusion in policy precluded coverage of claim for negligent failure to protect patron from assault and battery).

This case, on the other hand, involves a patron who by all accounts was upset, had been drinking, was driving in the parking lot at night, and ultimately hit another patron with the right side of his vehicle as he exited the parking lot. There is certainly record evidence[6] supporting both the idea that the incident was intentional, or that it was an unfortunate accident; this, and the fact that Lammert ultimately pleaded guilty to a reckless and not intentional crime, leads us to conclude that Atain cannot meet its burden of proving the exclusion applied to bar coverage. See Jensen, 349 S.W.3d at 374-75. Accordingly, we affirm the district court's equitable garnishment ruling.

## B.      Vexatious Refusal to Defend

Even though the district court found that the exclusions did not bar coverage, the court found that Atain's refusal to defend was not "vexatious" as a matter of law. The court found that Atain did have the duty to defend, but its failure to do so did not meet the rigorous test to prove a vexatious claim under Missouri Revised Statute § 375.420, which requires an insured to prove: (1) the existence of the insurance policy; (2) the insurance company's refusal to pay; and (3) such refusal was without reasonable cause or excuse. Thus, under Missouri law, there is no vexatious refusal where the insurer has reasonable cause to believe there is no liability and there is a meritorious defense to the policy. Watters v. Travel Guard Int'l, 136 S.W.3d 100, 108-10 (Mo. Ct. App. 2004). While generally a question of fact, the vexatious refusal issue can be determined as a matter of law based upon undisputed facts. Id. at 109.

The district court determined that because it was a close call on whether the above exclusions applied, there was reasonable cause for Atain to believe there was no coverage and corresponding duty to defend. Minden asserts that there is at the very

_____

[6]Atain does not argue that the "intentional or not" issue is a factual issue precluding summary judgment. Instead Atain repeatedly argues that it is entitled to summary judgment because an intentional act is not required in order for the exclusion to apply.

least a factual dispute about what Atain reasonably believed, and points to the following allegedly disputed facts: that if Atain had conducted any sort of investigation it would have discovered via numerous witness statements that the issue of Lammert's intent was in dispute; and that Minden's expert, George Smith, testified in a deposition that insurance industry practices would generally indicate a defense was warranted. Minden also cites Pace Properties v. American Manufacturers Mutual Insurance Co., 918 S.W.2d 883 (Mo. Ct. App. 1996), wherein the court held that the vexatious claim was a factual issue to be decided by the jury, even where the coverage issue was "litigable." Id. at 888. "The existence of a litigable issue does not preclude a vexatious penalty where evidence shows the insurer was vexatious and recalcitrant." Id. In Pace, the issue was submitted to the jury because, while the insurance company asserted that it relied upon an expert's report in refusing to defend, there was sufficient evidence that reliance upon that expert's report was unreasonable, and that a modicum of independent investigation would have indicated as much to an insurer. Id.

Atain persuasively cites Trainwreck in support of its argument that its refusal to defend cannot be considered vexatious in this case. In Trainwreck, the Missouri Court of Appeals held that the duty to defend is determined from the cause of action pleaded at the time the action is commenced, not from what an investigation may later show the facts to be. 235 S.W.3d at 39. The Trainwreck court held the insurer was not required to go beyond the initial police report, the plaintiff's petition, and a letter from the insured to avoid a vexatious refusal to defend judgment after denying coverage and defense of the claim. Id. at 36-39.

Similar to Trainwreck, Atain relied upon the initial police report charging Lammert with second-degree assault in its decision to deny coverage. While a further investigation might have unearthed the possibility of coverage, Missouri law does not seem to require such conduct for an insurance company to avoid a "vexatious" claim. And there seems to be no evidence that the situation is similar to Pace, as Minden has not established that Atain has acted particularly recalcitrant. Given our above analysis

regarding the exclusions, and the lack of any Missouri cases directly on point concerning the exclusions at issue, we find that Atain had reasonable cause to believe there was no coverage.  Accordingly, we agree with the district court that Atain's failure to defend was not vexatious within the meaning of Missouri Revised Statute § 375.420.

## III.  CONCLUSION

We affirm the district court.

_____